UNITED STATES, Appellee,

v.

Ronald L. COLEMAN, Specialist Four, U.S. Army, Appellant.

No. 59,522

CM 8600871.

U.S. Court of Military Appeals.

Sept. 26, 1988.

For Appellant: *Colonel John T. Edwards, Lieutenant Colonel Joel D. Miller, Captain Donald G. Curry, Jr., Captain Alfred H. Novotne.*

For Appellee: *Colonel Norman G. Cooper, Lieutenant Colonel Gary F. Roberson, Major Kathryn F. Forrester, Captain Bryant G. Snee.*

PER CURIAM:

Tried by general court-martial, military judge alone, the accused was convicted, despite his pleas, of murder, as well as aggravated assault and assault and battery on a child, in violation of Articles 118 and 128, Uniform Code of Military Justice, 10 USC §§ 918 and 928, respectively. The adjudged and approved sentence extends to a dishonorable discharge, confinement for 5 years, total forfeitures, and reduction to the lowest enlisted grade. The Court of Military Review affirmed. 25 M.J. 679 (1987). We granted review of the following issue:

WHETHER CUSTODIAL INTERROGATION OF APPELLANT VIOLATED *EDWARDS V. ARIZONA* WHEN HIS INTERROGATOR HAD ACTUAL KNOWLEDGE THAT AN ATTORNEY HAD BEEN REQUESTED AND NO ATTORNEY HAD BEEN PROVIDED.

Under the circumstances of this case, we affirm.

The facts, as found by the well-reasoned opinion of the court below, disclose that on July 29, 1986, the Army Criminal Investiga-

tion Command (CID) was notified of the death of accused's two and one-half month old daughter on the previous day. The CID notified the German police and arranged to accompany them to the accused's off-base dwelling. At the residence a CID agent and a German policeman looked around the home while the other CID agent talked to the accused. At the time, there was no suspicion of foul play. "The German policeman ... told" the accused "and his wife to come to the German police station the next morning."

The following day the accused and his wife went to the German police station where they were required to await the results of an autopsy which then was being conducted. At 1:00 p.m. the results, which indicated death by other than natural causes, were disclosed to the accused, and "inconsistencies" in his earlier statements were noted. The accused "declined to answer any further questions and requested an attorney. The interrogation was immediately terminated."

Thereupon, two CID agents drove the accused and his wife to the CID office. There, the CID agent knew that the accused "had refused to make a written statement" to "the German police and ... had requested an attorney." The CID contacted a legal officer and, upon his advice, thoroughly advised the accused of his rights under Article 31, UCMJ, 10 USC § 831. Accused waived these rights and gave a "written statement that contained admissions against his penal interest." 25 M.J. at 683.

Both at trial and on appeal appellant has contended that the investigation was "jointly"[1] conducted by the German and American police and, hence, that his request to the German police for legal counsel prohibited further interrogation by the CID, cit-

ing *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).

■ The "bright line rule" delineated in *Edwards* simply stated, is that once a suspect has indicated his desire to deal with a police interrogator only through his counsel, he may not be interrogated further by authorities until such counsel has been made available unless he, himself, initiates further communications. *See also Oregon v. Bradshaw*, 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983). Previously, we have acknowledged application of *Edwards* to the military justice system. *See United States v. Reeves*, 20 M.J. 234 (C.M.A.1985); *United States v. Harris*, 19 M.J. 331 (C.M.A.1985).

■ However, we have also held that there is an "overseas exception" to application of the *Edwards* rule. In *United States v. Vidal*, 23 M.J. 319 (C.M.A.), *cert. denied*, — U.S. —, 107 S.Ct. 2187, 95 L.Ed.2d 843 (1987), we held that the fact that an accused had made a request for counsel to German police authorities did not taint a statement made later to American police where there had been a complete advisement of rights given before the interrogation began. We concluded that the German investigator was conducting an investigation in response to alleged violations of German law and involving a German victim, and we opined:

Generally, the actions and the knowledge of officials of a foreign nation are not imputed to American authorities in connection with the application of American constitutional guarantees. ... Although there are obligations of mutual assistance under the NATO Status of Forces Agreement, we have concluded that nonetheless the investigators in the host country cannot be considered as simply an extension of American investi-

---

1. "Jointly" is defined as "in a joint manner; together." *See Webster's New Collegiate Dictionary* 624 (1977). We see a large distinction between an investigation of the same event conducted by two sovereign nations for violations of their own domestic law and an investigation conducted by foreign authorities at the behest of

American authorities for the purpose of discovering a violation of American law. Clearly, in the latter situation, a request for counsel made to a foreign investigator acting as an agent for American authorities would trigger a different result.

gative activity and that admissibility of the evidence seized by them is not to be tested by American constitutional standards. Since the investigation by ... [the German policeman] should not be viewed as an investigation in behalf of American authorities, we see no reason to impute his knowledge of appellant's request for counsel to ... [the American police investigator].

23 M.J. at 323 (citations omitted).

Here, of course, the fact of the request for counsel was directly communicated to the American investigator. We do not believe this fact is of decisional significance, however. As we held in *Vidal:*

[W]e reason that a request for counsel made in connection with a foreign investigation may result only from the American suspect's unfamiliarity with the foreign legal system and does not necessarily mean that the suspect is unwilling to talk to an American investigator until he has been provided counsel. The suspect is adequately protected if he is warned of his rights under American law when first questioned by American officials. In short, we conclude that the requirements of *Edwards v. Arizona,* ... [*supra* ], are not triggered by a request for counsel made to a foreign official.

23 M.J. at 323.

In reaching our conclusion here, we are cognizant of the recent decision of the Supreme Court in *Arizona v. Roberson,* —— U.S. ——, 108 S.Ct. 2093, 2098, 100 L.Ed.2d 704 (1988), where the Court, in reemphasizing the "bright line rule" of *Edwards,* held that a request for counsel made to a policeman investigating one crime would carry over to another policeman investigating another crime even without actual knowledge of the first request having passed. The Court

attach[ed] no significance to the fact that the officer who conducted the second interrogation did not know that respondent [Roberson] had made a request for counsel. In addition to the fact that *Edwards* focuses on the state of mind of the suspect and not of the police, custodial interrogation must be conducted pursuant to established procedures, and those procedures in turn must enable an officer who proposes to initiate an interrogation to determine whether the suspect has previously requested counsel.

*Id.* at 2101.

We, too, here "focus[ ] on the state of mind of the suspect." As we recognized in *Vidal,* the facts leading an American suspect to request counsel during an interview by German police may be entirely different from those affecting his counsel decision during an American interview. An accused, thus, may be entirely willing to cooperate without counsel in the latter setting, even though the added intimidations in a foreign interview may make him unwilling to do so in the former setting. Because the factors underlying the request for the assistance of counsel are different depending on the authorities conducting the investigation, we do not believe that *Edwards* or *Roberson* requires that a request for counsel made to foreign authorities[2] applies to the initial interrogation by American authorities after such a request.[3]

The decision of the United States Army Court of Military Review is affirmed.

2. We acknowledge the similarity of the German "rights advisement" to our own advisement under Article 31. Nonetheless, for the reasons stated in our opinion, the form of the German advisement does not affect our decision here.

3. We emphasize the necessity of a complete rights advisement prior to the subsequent interrogation.