UNITED STATES, Appellee,

v.

**William P. FASSLER, Staff Sergeant,
U.S. Air Force, Appellant.**

No. 61,044/AF.
ACM 26822.

U.S. Court of Military Appeals.

Sept. 28, 1989.

For Appellant: *Captain William E. Boyle* (argued); *Colonel Richard F. O'Hair* (on brief).

For Appellee: *Major Terry M. Petrie* (argued); *Colonel Joe R. Lamport* and *Lieutenant Colonel Robert E. Giovagnoni* (on brief).

*Opinion of the Court*

EVERETT, Chief Judge:

A military judge sitting as a general court-martial at Goodfellow Air Force Base, Texas, tried appellant for unauthorized absence, disobedience, and various drug offenses. Upon being arraigned, appellant moved to suppress his oral and written pretrial statements to the Air Force Office of Special Investigations (OSI) and certain physical evidence seized in a search resulting from those statements. The military judge denied the motion to suppress. Thereafter, Fassler entered guilty pleas to some of the charged offenses;[1] but, in order to preserve his rights under the motion to suppress, he entered conditional pleas of guilty with respect to the other offenses.[2]

---

1. Appellant pleaded guilty to unauthorized absence from September 2–4, 1987, and from September 8–11, 1987; disobedience of a lawful order from his superior commissioned officer; and failure to obey a lawful order of a security policeman, in violation of Articles 86, 90, and 92, Uniform Code of Military Justice, 10 USC §§ 886, 890, and 892, respectively.

2. The conditional guilty pleas were to violating a lawful general regulation on September 15, 1987, by wrongfully possessing drug paraphernalia; wrongfully distributing marijuana at divers times between June 1 and August 31, 1987; wrongfully using marijuana at divers times between November 4, 1985, and September 10, 1987; and wrongfully using methamphetamine at divers times between September 1, 1986, and September 9, 1987, in violation of Articles 92

The military judge found Fassler guilty pursuant to his pleas and sentenced him to a dishonorable discharge, confinement for 40 months, total forfeitures, and reduction to E–1. The sentence was approved by the convening authority; and the Court of Military Review affirmed the findings and sentence in a short-form opinion. We granted review on this issue:

WHETHER APPELLANT'S 14 SEPTEMBER 1987 STATEMENTS TO AFOSI AGENTS AND THE [FRUITS OF THE] SUBSEQUENT SEARCH AND SEIZURE RESULTING THEREFROM SHOULD HAVE BEEN SUPPRESSED UNDER MIL.R.EVID. 305(e) IN LIGHT OF THE SUPREME COURT'S DECISION IN *ARIZONA v. ROBERSON*, 486 U.S. ——, 108 S.CT. 2093, 100 L.ED.2d 704 (1988), WHICH APPLIED THE RATIONALE OF *EDWARDS v. ARIZONA*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), TO UNRELATED OFFENSES.

## I

After being absent without authority, Fassler was apprehended—with considerable difficulty—on Friday, September 11, 1987, and was placed in confinement. The security police warned him that he was suspected of unauthorized absence and advised him of his rights to remain silent as to that offense and to have an attorney. Fassler asked for a lawyer; and interrogation ceased.

No area defense counsel was present at the base where Fassler was confined. However, on Monday morning, September 14, he was allowed to talk by telephone for about 10 minutes with defense counsel at a nearby base. This conversation concerned his apprehension for unauthorized absence and an impending hearing on his pretrial confinement.

Because of a positive urinalysis and other circumstances, OSI agents suspected Fassler of drug offenses. They knew that

and 112a, UCMJ, 10 USC §§ 892 and 912a, respectively. Two specifications alleging distribution of controlled substances were dismissed for

he had been in pretrial confinement since Friday, September 11, and that he had an attorney; but they wished to interview him, if possible. According to the testimony of OSI Special Agent Christopher Kimbrell:

The morning of the 14th, prior to interviewing Sgt. Fassler, I called Capt. Walker, here at the legal office. I didn't know the procedures or if there were any type of procedures set up where we were not allowed to talk to Sgt. Fassler since he was in confinement, so I wanted to check with the legal office. Capt. Walker told me at that time that he had an attorney and he had been picked up on charges of AWOL. I told Capt. Walker that all I wanted to do was talk to Sgt. Fassler about his urinalysis failure. At that time, he said there was nothing wrong with that as long as you don't mention anything about the AWOL.

Before questioning Fassler, the OSI agents advised him of his rights with respect to the drug offenses. Fassler neither requested a lawyer nor asserted his right to silence. Instead, during the ensuing discussion, he made incriminating statements, which became the basis for a written statement. The combination of Fassler's written statement and his oral statements, as reduced to writing by his interrogators, provided the probable cause for a warrant to search his quarters. During that search, other incriminating evidence was obtained.

## II

### A

Appellant's trial took place prior to the Supreme Court's decision in *Arizona v. Roberson*, 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988). Thus, the military judge was primarily concerned with the possible applicability of Mil.R.Evid. 305(e), Manual for Courts–Martial, United States, 1984, which states:

multiplicity without presentation of any evidence by the Government.

When a person subject to the code who is required to give warnings under subdivision (c) intends to question an accused or person suspected of an offense and knows or reasonably should know that counsel either has been appointed for or retained by the accused or suspect *with respect to that offense,* the counsel must be notified of the intended interrogation and given a reasonable time in which to attend before the interrogation may proceed.

(Emphasis added.)

As the Drafters' Analysis makes clear, Mil.R.Evid. 305(e) is derived from *United States v. McOmber,* 1 MJ 380 (CMA 1976), where the Court was concerned with protecting the statutory right of an accused to have counsel provided for his trial by court-martial. App. 22, Manual, *supra* at A22-14.1. *See* Art. 27, UCMJ, 10 USC § 827. Despite Article 27, we have held that military interrogators may question an accused who has counsel, so long as the interrogation concerns matters unrelated to the offense as to which he is being represented. Our holdings are reflected in the emphasized language of Mil.R.Evid. 305(e)—"with respect to that offense"—on which the military judge apparently relied in denying the motion to suppress.

However, in light of *Arizona v. Roberson, supra*—which was decided after Fassler's trial—it now seems clear that admissibility of appellant's pretrial statements does not hinge on Mil.R.Evid. 305(e) but, instead, on application of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

In *Miranda,* the Supreme Court required that, in custodial interrogation, the accused be given a warning of his right to remain silent and to have an attorney present. According to the Court:

If the individual states that he wants an attorney, the interrogation must cease until an attorney is present. At that time, the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning. If the individual cannot obtain an attorney and he indicates that he wants one before speaking to police, they must respect his decision to remain silent.

384 U.S. at 474, 86 S.Ct. at 1628, 16 L.Ed.2d at 720.

Subsequent to *Miranda,* the Supreme Court held that, if an accused requests to remain silent, his right to silence must be scrupulously honored but that assertion of this right does not preclude further interrogation. *See Michigan v. Mosley,* 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975).

A request for counsel, however, is treated differently. Under the "bright-line" prophylactic rule announced in *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), if during custodial interrogation a suspect asks for a lawyer, he cannot be interrogated further until a lawyer has been provided. As the Supreme Court has explained:

[T]his relatively rigid requirement that interrogation must cease upon the accused's request for an attorney ... has the virtue of informing police and prosecutors with specificity as to what they may do in conducting custodial interrogation, and of informing courts under what circumstances statements obtained during such interrogation are not admissible. This gain in specificity, which benefits the accused and the State alike, has been thought to outweigh the burdens that the decision in *Miranda* imposes on law enforcement agencies and the courts by requiring the suppression of trustworthy and highly probative evidence even though the confession might be voluntary under traditional Fifth Amendment analysis.

*Arizona v. Roberson,* 486 U.S. at 681–82, 108 S.Ct. at 2098, 100 L.Ed.2d at 713 (quoting *Fare v. Michael C.,* 442 U.S. 707, 718, 99 S.Ct. 2560, 2568, 61 L.Ed.2d 197 (1979)). Only if the accused "initiates" a discussion of the crime may he then be asked about it. *Oregon v. Bradshaw,* 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983).

After *Edwards* had been decided, questions remained open as to whether a sus-

pect who requested counsel in connection with custodial interrogation about one offense might nonetheless be interviewed about entirely different and unrelated offenses—especially if the subsequent questioning was by interrogators who were totally unaware of the initial request. In *Roberson,* the Supreme Court answered such questions in the negative.

There the Court concluded that "a suspect's request for counsel should apply to any questions the police wish to pose." 486 U.S. at 684, 108 S.Ct. at 2099, 100 L.Ed.2d at 715. The Court remarked that

> Roberson's unwillingness to answer any question without the advice of counsel, without limiting his request for counsel, indicated that he did not feel sufficiently comfortable with the pressures of custodial interrogation to answer questions without an attorney. This discomfort is precisely the state of mind that *Edwards* presumes to persist unless the suspect himself initiates further conversation about the investigation; unless he otherwise states, *see Connecticut v. Barrett,* ... [479 U.S. 523, 107 S.Ct. 828, 93 L.Ed.2d 920 (1987)], there is no reason to assume that a suspect's state of mind is in any way investigation-specific.

486 U.S. at 684, 108 S.Ct. at 2099, 100 L.Ed.2d at 715.

The Court also noted that *Miranda* was concerned with the Fifth Amendment right against self-incrimination, rather than with the Sixth Amendment right to counsel. Therefore, Sixth Amendment precedents permitting reception in evidence of incriminating statements made concerning one offense by an accused who had requested counsel as to a different offense were inapplicable to pretrial custodial interrogation. Further, the Court

attach[ed] no significance to the fact that the officer who conducted the second interrogation did not know that ... [the suspect] had made a request for counsel [when questioned earlier]. In addition to the fact that *Edwards* focuses on the state of mind of the suspect and not of the police, custodial interrogation must be conducted pursuant to established procedures, and those procedures in turn must enable an officer who proposes to initiate an interrogation to determine whether the suspect has previously requested counsel. In this case ... [Roberson's] request had been properly memorialized in a written report but the officer who conducted the interrogation simply failed to examine that report. Whether a contemplated reinterrogation concerns the same or a different offense, or whether the same or different law enforcement authorities are involved in the second investigation, the same need to determine whether the suspect has requested counsel exists. The police department's failure to honor that request cannot be justified by the lack of diligence of a particular officer.

486 U.S. at 687, 108 S.Ct. at 2101, 100 L.Ed.2d at 717 (footnote omitted).

In *United States v. Tempia,* 16 USCMA 629, 37 CMR 249 (1967), this Court held that *Miranda* applied to the military justice system. *Roberson* is an offspring of *Miranda;* and its prophylactic rules are equally applicable to trials by court-martial Therefore, regardless of Mil.R.Evid. 305(e), a suspect who requests counsel during custodial interrogation may not thereafter be interviewed at the initiative of authorities about *any* offense.[3]

---

**3.** In *United States v. Coleman,* 26 MJ 451 (CMA 1988), we held that a request for counsel made with respect to a foreign custodial interrogation did not preclude questioning by American investigators. We concluded that

> the facts leading an American suspect to request counsel during an interview by German police may be entirely different from those affecting his counsel decision during an American interview. An accused, thus, may

> be entirely willing to cooperate without counsel in the latter setting, even though the added intimidations in a foreign interview may make him unwilling to do so in the former setting. Because the factors underlying the request for the assistance of counsel are different depending on the authorities conducting the investigation, we do not believe that *Edwards* or *Roberson* requires that a request for counsel made to foreign authorities ap-

## B

■ With this in mind, the present appeal is easy to resolve. Fassler was placed in confinement on September 11. Even though on September 14 he was taken from the confinement facility to the OSI office for interrogation, he still was in "custody" for purposes of *Miranda.* Having requested that he be provided counsel, he could not be interrogated thereafter by the OSI—either with respect to the unauthorized absence for which he had been confined or with respect to any other suspected offense—unless he "initiated" a discussion. This never occurred.

The agents were aware of Fassler's request for counsel; but, under *Roberson,* even if they had not been, this would have made no difference. Admittedly, the interrogation by the OSI was conducted in good faith on the basis of legal advice that had been provided to the agents; and this advice, which preceded the Supreme Court's decision in *Roberson,* apparently relied on Mil.R.Evid. 305(e), which would have allowed the interrogation. However, the good faith of the interrogators also is irrelevant because, as the Supreme Court has made clear, the focus must be "on the state of mind of the suspect and not of the police". 486 U.S. at 687, 108 S.Ct. at 2101, 100 L.Ed.2d at 717.

The Government seeks to distinguish *Roberson* on the ground that Fassler had an opportunity to talk by telephone for 10 minutes with a defense counsel at another base.[4] *Miranda* states that, if an accused requests an attorney, "the interrogation must cease *until an attorney is present."* 384 U.S. at 474, 86 S.Ct. at 1628, 16 L.Ed.2d at 723. We need not consider whether

some type of "constructive presence" on the attorney's part might satisfy this requirement. Of one thing we are sure: The 10–minute long-distance telephone conversation between Fassler and the defense counsel did not. Therefore, on September 14, the interrogators were not free to question him about the unauthorized absence; and, under *Roberson,* it was equally prohibited for them to question him about other offenses, however unrelated.

## III

The motion to suppress should have been granted; and so the findings of guilty must be vacated with respect to the charges as to which Fassler entered conditional pleas of guilty. Aside from the positive urinalysis, it appears that the Government has no admissible evidence with which to prove these charges. However, since the conditional pleas of guilty obviated the need for the Government to present its evidence, we are unsure whether the evidence is available and so shall not dismiss these charges at this time.

The decision of the United States Air Force Court of Military Review is reversed as to specification 2 of Charge III and specifications 1, 4, and 5 of Charge IV, and the sentence. The findings of guilty thereon are set aside. The record of trial is returned to the Judge Advocate General of the Air Force for remand to that court which may order a rehearing on the affected charges and the sentence or it may dismiss the affected Charges and reassess the sentence based on the remaining findings of guilty.

Judges COX and SULLIVAN concur.

---

. plies to the initial interrogation by American authorities after such a request. *Id.* at 453 (footnotes omitted).

4. The police may interrogate a suspect who has consulted with a lawyer but who has never

manifested his desire to communicate with the police except through the offices of counsel. *See United States v. Jordan,* 29 MJ 177 (CMA 1989).