UNITED STATES, Appellee,

v.

Jose C. HINOJOSA, Jr., Sergeant, U.S. Army, Appellant.

No. 65,751.

CM 8902746.

U.S. Court of Military Appeals.

Argued April 24, 1991.

Decided Sept. 30, 1991.

For Appellant: *Captain Robin N. Swope* (argued); *Colonel Robert B. Kirby* (on brief).

For Appellee: *Major Thomas E. Booth* (argued); *Colonel Alfred F. Arguilla, Lieutenant Colonel Daniel J. Dell'Orto, Captain Randy V. Cargill* (on brief).

*Opinion of the Court*

EVERETT, Senior Judge:

At his general court-martial held in the Federal Republic of Germany, appellant pleaded guilty to wrongful use of heroin and of marijuana and wrongful distribution of heroin, all in violation of Article 112a, Uniform Code of Military Justice, 10 USC § 912a. Thereafter, a court composed of officer members sentenced him to a bad-conduct discharge, confinement and forfeiture of $400 pay per month for 72 months, and reduction to the lowest enlisted grade. Pursuant to a pretrial agreement, the convening authority reduced the period of confinement by 4 days as pretrial-confinement credit and suspended all confinement in excess of 47 months and 26 days; he approved the remaining trial results.

In the Court of Military Review, appellant successfully argued that the convening authority had applied his credit for pretrial confinement improperly, and the court remedied the situation. Otherwise, the Court of Military Review affirmed in an unpublished opinion (Oct. 28, 1990).

Before us, appellant contends that, in light of *Minnick v. Mississippi*, — U.S. —, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990), the military judge erred by admitting his statements made to an agent of the Army Criminal Investigation Command (CID) and without the presence of counsel when the agent knew about appellant's attorney-client relationship with a foreign civilian attorney. Although we conclude that ap-

pellant's unconditional guilty pleas waived any right to assert this matter on appeal, we nonetheless have resolved his complaint, though contrary to his position.

## I

### A

As part of an ongoing local investigation, Dutch police arrested Hinojosa on May 2, 1989, and interviewed him later that day. Prior to that interview, the police advised Hinojosa of his right to decline to answer questions; and Hinojosa responded that, indeed, he did not want to proceed with the interrogation until he had seen a lawyer. Apparently, Hinojosa did see a Dutch attorney 5 hours later.

The next afternoon, Dutch police again interviewed Hinojosa, preliminary to which they again advised him that he did not have to answer questions. Though Hinojosa at first declined to make a statement, later he in fact did make one at the conclusion of an hour-and-a-half interview. After Dutch police had interviewed Hinojosa one or two more times and had coordinated their investigation with the public prosecutor, they released Hinojosa to the United States military.

On May 11, 1989, Special Agent Vanney of the CID interviewed appellant about the same offenses that had concerned the Dutch police. At the outset, he advised appellant of his rights under Article 31(b), UCMJ, 10 USC § 831(b); appellant, though, agreed to the interview and did not request an attorney. Vanney knew that appellant had seen a Dutch lawyer, but appellant told him that the lawyer did not represent him.

### B

At his court-martial arraignment, appellant moved to suppress all evidence of his statements to Dutch police (asserting they were coerced) and to the CID (citing *United States v. McOmber*, 1 MJ 380 (CMA 1976)). After the military judge denied the motion in toto, appellant entered unconditional guilty pleas to the offenses set out earlier in this opinion. *See* RCM 910(a),

Manual for Courts–Martial, United States, 1984.

Additionally, he pleaded not guilty to a specification of using heroin and to another specification of distributing heroin. When the Government elected to present no evidence on the contested allegations, these specifications were dismissed, so guilty findings were entered only as to the specifications to which appellant had pleaded guilty. No evidence of his pretrial statements ever was offered during the proceedings, other than as referred to during the litigation of appellant's suppression motion.

## II

Notwithstanding his unconditional guilty pleas as to all offenses of which he was convicted, appellant urges that his conviction be reversed. His contention is based on *Minnick*—a case not specifically urged during the litigation of his trial motion because it was decided much later, only after the Court of Military Review had acted. We decline to reverse for two reasons.

■ First, despite his effort to argue away the dispositive effect of his unconditional guilty pleas, those pleas foreclose any appellate relief from his unsuccessful suppression motion. *United States v. Cooper*, 32 MJ 83 (CMA 1991); RCM 910(j) and Mil.R.Evid. 304(d)(5), Manual, *supra.*

■ Second, even assuming the procedural vitality of his appeal, the substance of his claim is without merit. In *United States v. Coleman*, 26 MJ 451 (CMA 1988), *cert. denied*, 488 U.S. 1035, 109 S.Ct. 850, 102 L.Ed.2d 982 (1989), we held that, although the military investigator knew of appellant's request of foreign police for an attorney, a later interview by the investigator, following correct Article 31(b) advice and following a waiver of those rights by the accused, did not violate *Arizona v. Roberson*, 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988), and *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). Discussing our earlier opinion in *United States v. Vidal*, 23 MJ

319 (CMA), *cert. denied,* 481 U.S. 1052, 107 S.Ct. 2187, 95 L.Ed.2d 843 (1987), we reasoned that "the facts leading an American suspect to request counsel during an interview by German police may be entirely different from those affecting his counsel decision during an American interview." 26 MJ at 453.

In *Minnick,* the Supreme Court extended *Arizona v. Roberson* and *Edwards v. Arizona,* both *supra,* to require actual presence of an attorney at any subsequent interview, once an accused has requested counsel. The Court recognized that a counsel request signals a suspect's conclusion that he may be ill-equipped to deal with the authority of the police without help and that his right to that help is undermined if the police do not assure that the counsel actually is present during any later confrontation with police.

Nothing in that opinion, however, is inconsistent with our decision or our reasoning in *Coleman.* We reiterated there what we had said in *Vidal:*

[A] request for counsel made in connection with a foreign investigation may result only from the American suspect's unfamiliarity with the foreign legal system and does not necessarily mean that the suspect is unwilling to talk to an American investigator until he has been provided counsel. The suspect is ade-

quately protected if he is warned of his rights under American law when first questioned by American officials. In short, we conclude that the requirements of *Edwards v. Arizona* ... are not triggered by a request for counsel made to a foreign official.

26 MJ at 453, quoting from 23 MJ at 323.

In other words, appellant's request for an attorney—made to Dutch police during a Dutch investigation—may well have signaled only his discomfort in dealing with a foreign law enforcement system; it does not logically follow that he necessarily had a similar discomfort when interviewed by American investigators. As we held in *Vidal* and affirmed in *Coleman,* it is enough to protect a suspect's rights to advise him of those rights at the outset of the American interview; then, if he indicates his desire for help in dealing with American police by requesting counsel, that right must be fully honored. *Minnick v. Mississippi, supra.*

### III

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge SULLIVAN and Judge COX concur.