

**FILE**

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE MAY 0 8 2014

CHIEF JUSTICE

This opinion was filed for record
at 8:00 am on May 8, 2014

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | NO. 88577-0 |
| Respondent, | |
| v. | EN BANC |
| CESAR E. TROCHEZ-JIMENEZ, | |
| Petitioner. | Filed **MAY 0 8 2014** |

STEPHENS, J.—Petitioner Cesar Trochez-Jimenez appeals his conviction for murder in the second degree, arguing the statements he made during custodial interrogation should have been suppressed because they were taken in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966); *Edwards v. Arizona*, 451 U.S. 477, 101 S. Ct. 1880, 68 L. Ed. 2d 378 (1981); and *Arizona v. Roberson*, 486 U.S. 675, 108 S. Ct. 2093, 100 L. Ed. 2d 704 (1988). Together these cases hold that prior to custodial interrogation, a suspect must be informed of his right to remain silent and right to counsel and once the suspect invokes his right to counsel, no further interrogation about any offense by any authorities may be conducted until counsel is present or the suspect initiates communication. These cases, however, involved only

domestic investigations regarding domestic crimes. At issue is whether the same rule applies when a suspect requests an attorney during an interrogation conducted outside the United States by foreign authorities regarding a foreign crime. Both the trial court and Court of Appeals said it does not. We agree and affirm.

FACTS AND PROCEDURAL HISTORY

This appeal arises from Cesar Trochez-Jimenez's conviction following a jury trial for the second degree murder of Mario Batiz-Castillo. Trochez-Jimenez does not dispute that he shot Batiz-Castillo, who at the time was having an affair with Trochez-Jimenez's then girl friend, now wife, Lesli Batiz. Rather, Trochez-Jimenez maintains he shot Batiz-Castillo out of self-defense.

After shooting Batiz-Castillo, Trochez-Jimenez fled to Canada, where he was apprehended by Canadian authorities for illegal entry into Canada. The arresting officer informed Trochez-Jimenez of his right, under the Canadian Charter of Rights and Freedoms, to remain silent and to "'retain and instruct counsel in private without delay.'" Verbatim Report of Proceedings (VRP) (Aug. 11-16, Oct. 1, 2010) at 55-57 (quoting State's Pretrial Ex. 5). The officer also informed him that he could have the assistance of a lawyer without charge. *Id.* at 57. Trochez-Jimenez responded that he wanted a lawyer, though it is unclear from the record whether he was ever able to consult with one. *Id.* at 71-73. Trochez-Jimenez maintains he was not.

During their investigation, Canadian authorities discovered that Trochez-Jimenez was a suspect in a homicide in Seattle, Washington, and notified the King County Sheriff's Office of his whereabouts. Two detectives from the King County Sheriff's

Office traveled to Vancouver, B.C., to speak with Trochez-Jimenez. When they arrived at the Vancouver jail, Trochez-Jimenez was being questioned by Canadian authorities. By the time the King County detectives were able to speak to him, Trochez-Jimenez had been in custody for about six hours. The detectives were aware Trochez-Jimenez had been advised of his right to counsel under the Canadian charter but were unaware that he had requested counsel be provided. They informed Trochez-Jimenez of his *Miranda* rights, with the help of a Spanish-speaking Canadian police officer and using a standard King County form printed in Spanish, and likened his *Miranda* rights to those under the Canadian charter. VRP (Aug. 10, 2010) at 94-95; VRP (Aug. 11-16, Oct. 1, 2010) at 11-19, 33-34, 81; State's Pretrial Ex. 3; State's Ex. 43, at 2-4. When asked if he understood his right to an attorney, Trochez-Jimenez responded, "'Okay,'" signed the written waiver form and agreed to talk to the detectives. VRP (Aug. 11-16, Oct. 1, 2010) at 90 (quoting State's Ex. 43, at 3). In his statement to the detectives, Trochez-Jimenez admitted shooting Batiz-Castillo because he was "furious." State's Ex. 43, at 12-15, 29.

Before trial, Trochez-Jimenez moved to suppress his statement, claiming it was taken pursuant to a custodial interrogation after he had invoked his right to counsel, in violation of *Edwards* and its progeny.[1] The trial court rejected this argument. The court found that Trochez-Jimenez's assertion of his right to counsel in the Canadian

---

[1] Trochez-Jimenez also argued that his statement should be suppressed because his childhood experiences and limited proficiency in Spanish prevented him from fully comprehending his rights, and, therefore, any waiver of his rights was not knowingly, voluntarily and intelligently made. Clerk's Papers at 64-66. The trial court did not find Trochez-Jimenez to be credible, concluding he "clearly understood" his *Miranda* rights. CP at 82. Trochez-Jimenez did not appeal this conclusion; therefore, this issue is not before us.

investigation was not an assertion of his Fifth Amendment[2] right to counsel under *Miranda*: "Nothing about the *Miranda* decision or its progeny requires suppression, because the defendant asserted a different right under a different document to an officer of a different jurisdiction than the United States." VRP (Oct. 19, 2010) at 97. The trial court additionally did not credit Trochez-Jimenez's claim that he had believed his request for counsel to the Canadian authorities applied to the King County investigation when he had been told specifically that he was under arrest for immigration violations, and it was "with regard to those issues that he was advised of his Charter rights and asserted his right to counsel." *Id.* at 96-97. Division One of the Court of Appeals affirmed, holding that an invocation of a right to counsel made to foreign officials based on a foreign legal source does not trigger the *Edwards* and *Roberson* rule to invalidate a subsequent waiver of Fifth Amendment rights. *State v. Trochez-Jimenez*, 173 Wn. App. 423, 434, 294 P.3d 783 (2013). We granted review. *State v. Trochez-Jimenez*, 177 Wn.2d 1019, 304 P.3d 115 (2013).

## ANALYSIS

The Fifth Amendment, which applies to the states by virtue of the Fourteenth Amendment, *Malloy v. Hogan*, 378 U.S. 1, 6, 84 S. Ct. 1489, 12 L. Ed. 2d 653 (1964), guarantees that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V.[3] The right to be free from compelled self-

---

[2] U.S. CONST. amend. V.

[3] The Ninth Circuit has held that "the constitutional guarantees of the fifth amendment as well as other constitutional safeguards secure United States *citizens* against acts of agents of the United States whether acting at home or abroad." *United States v. Covington*, 783 F.2d 1052, 1056 (9th Cir. 1985) (emphasis added). We do not address the

incrimination is also protected under the Washington State Constitution. CONST. art. I, § 9. This court has interpreted the two provisions coextensively, *State v. Easter*, 130 Wn.2d 228, 235, 922 P.2d 1285 (1996), and Trochez-Jimenez has not argued that we should treat them differently in this case.

In *Miranda*, "[t]he [United States Supreme] Court observed that 'incommunicado interrogation' in an 'unfamiliar,' 'police-dominated atmosphere,' involves psychological pressures 'which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely.'" *Maryland v. Shatzer*, 559 U.S. 98, 103, 130 S. Ct. 1213, 175 L. Ed. 2d 1045 (2010) (citation omitted) (quoting *Miranda*, 384 U.S. at 456-57, 467). It therefore "adopted a set of prophylactic measures to protect a suspect's Fifth Amendment right from the 'inherently compelling pressures' of custodial interrogation." *Id.* (quoting *Miranda*, 384 U.S. at 467). "To counteract the coercive pressure, *Miranda* announced that police officers must warn a suspect prior to questioning that he has a right to remain silent, and a right to the presence of an attorney. After the warnings are given, if the suspect indicates that he wishes to remain silent, the interrogation must cease. Similarly, if the suspect states that he wants an attorney, the interrogation must cease until an attorney is present." *Id.* at 103-04 (citations omitted).

---

potential threshold issue of whether Trochez-Jimenez, a *foreign national*, was similarly entitled to *Miranda* warnings when he was interrogated by Washington detectives outside the United States because the State has assumed that "all the protections of *Miranda* applied" in this case. State's Suppl. Br. at 10; *see Trochez-Jimenez*, 173 Wn. App. at 429-30 (concluding this issue is not in dispute). We note, however, that the Fifth Amendment right to counsel is a *trial* right that is implicated when a statement is introduced in a United States court. *United States v. Verdugo-Urquidez*, 494 U.S. 259, 264, 110 S. Ct. 1056, 108 L. Ed. 2d 222 (1990).

Following *Miranda*, the Court remained concerned that police might "take advantage of the mounting coercive pressures of 'prolonged police custody,' *Roberson*, 486 U. S., at 686, by repeatedly attempting to question a suspect who previously requested counsel until the suspect is 'badgered into submission,' *id.*, at 690 (KENNEDY, J., dissenting)." *Shatzer*, 559 U.S. at 105. To foreclose the potential for abuse, the *Edwards* court held that "when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. [He] is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." 451 U.S. at 484-85. The Court subsequently clarified that the *Edwards* rule is neither offense specific nor agency specific. *Roberson*, 486 U.S. at 687-88.

Trochez-Jimenez argues that just as this rule applies across American jurisdictions, offenses, and agencies, it applies when a person invokes a right to counsel under a foreign charter to foreign officials even in the absence of United States involvement in that investigation.[4] No court has so held. Several courts, however, have held to the contrary and declined to infer an invocation of one's right to counsel under the Fifth Amendment from a request for counsel under foreign laws. *See Holland v. Florida*, 813 So. 2d 1007,

---

[4] The Court of Appeals emphasized that there was no indication the Canadian officials were acting at the behest of King County detectives or in any way working in concert with them. *Trochez-Jimenez*, 173 Wn. App. at 434. Trochez-Jimenez concedes this point, arguing that the relevant inquiry is whether soliciting a waiver of his right to counsel under *Miranda* created coercion by suggesting that his previous request for counsel was in vain. Suppl. Br. of Pet'r at 10-11.

1009-10 (Fla. Dist. Ct. App. 2002) (holding a request for counsel under Canadian law is not an invocation of one's Fifth Amendment right to counsel under *Miranda*); *United States v. Dock*, 40 M.J. 112, 117-19 (C.M.A. 1994) (holding *Edwards* is not applicable when a suspect invokes his right to counsel under German law); *United States v. Coleman*, 26 M.J. 451, 453 (C.M.A. 1988) (same); *United States v. Vidal*, 23 M.J. 319, 320-23 (C.M.A.) (same), *cert. denied*, 481 U.S. 1052 (1987).

These cases are consistent with the settled principle that the Fifth Amendment right to counsel cannot be invoked anticipatorily before the Fifth Amendment attaches. *See Montejo v. Louisiana*, 556 U.S. 778, 797, 129 S. Ct. 2079, 173 L. Ed. 2d 955 (2009); *McNeil v. Wisconsin*, 501 U.S. 171, 182 n.3, 111 S. Ct. 2204, 115 L. Ed. 2d 158 (1991). In *McNeil*, the Milwaukee County Sheriff's Office suspected McNeil of having committed two separate crimes in the cities of West Allis and Caledonia. *Id.* at 173. McNeil was arrested, charged, and appointed counsel with regard to the West Allis crime. *Id.* While he was in jail pending trial, officers interrogated him about the Caledonia crime. *Id.* at 174. McNeil waived his *Miranda* rights, admitted his involvement in the crime, and provided a written statement recounting the events. *Id.* Although he never requested an attorney during any interrogation prior to or after his arrest, he sought to suppress his statements under *Edwards* and *Roberson*, contending that his courtroom appearance with an attorney for the West Allis offense constituted an invocation of his Sixth Amendment right to counsel as well as his Fifth Amendment *Miranda* right to counsel. *Id.* The Court disagreed, noting that allowing a Sixth Amendment request for counsel to trigger *Miranda* protections would be contrary to the

fact that "[w]e have . . . never held that a person can invoke his *Miranda* rights anticipatorily, in a context other than 'custodial interrogation,'" especially when "[m]ost rights must be asserted when the government seeks to take the action they protect against." *Id.* at 182 n.3; *see Montejo*, 556 U.S. at 797.

Trochez-Jimenez argues he did not anticipatorily invoke his *Miranda* rights because he was in custody at the time he requested counsel, albeit by Canadian authorities. Wash. Supreme Court oral argument, *State v. Trochez-Jimenez*, No. 88577-0 (Jan. 16, 2014), at 9 min., 43 sec. through 11 min., 19 sec., *audio recording by* TVW, Washington State's Public Affairs Network, *available at* http://ww.tvw.org/. Regardless of whether Trochez-Jimenez was under custodial interrogation, the Fifth Amendment right to counsel does not attach when that custodial interrogation is void of federal or state involvement. Because a suspect's *Miranda* rights derive from the Fifth Amendment, they protect against instances of potential self-incrimination. No potential for self-incrimination, however, exists with a foreign prosecution regarding a foreign crime. *United States v. Balsys*, 524 U.S. 666, 669, 118 S. Ct. 2218, 141 L. Ed. 2d 575 (1998) (holding a concern of possible foreign prosecution is beyond the scope of the self-incrimination clause of the Fifth Amendment). It therefore follows that for the right to attach, the custodial interrogation must be by federal or state governments, not foreign authorities.

Other courts have also declined to rule that a request for counsel to foreign authorities triggers the *Edwards* protections because such a rule is not compelled by the prophylactic purposes of *Edwards* and subsequent cases. In *Vidal*, German authorities

apprehended Vidal on suspicion of kidnapping and raping a German university student. 23 M.J. at 320-21. After being informed of his rights under German law, Vidal indicated that he wanted counsel and did not consent to being questioned. *Id.* at 321. Authorities for the United States military arrived later and administered *Miranda* warnings. *Id.* They, however, were not aware of Vidal's prior request for an attorney. *Id..* Vidal subsequently waived his rights and admitted his involvement in the crimes. *Id.* at 321-22. The court refused to impute Vidal's request for counsel onto American authorities who had no involvement in the German investigation. *Id.* at 323. The court explained that there was no need to extend the *Edwards* prohibition to encompass foreign interrogations where the reasoning for the *Edwards* rule does not apply, particularly when "a request for counsel made in connection with a foreign investigation may result only from the American suspect's unfamiliarity with the foreign legal system and does not necessarily mean that the suspect is unwilling to talk to an American investigator until he has been provided counsel." *Id.*; *accord United States v. Hinojosa*, 33 M.J. 353, 355 (C.M.A. 1991) (reasoning that "appellant's request for an attorney—made to Dutch police during a Dutch investigation—may well have signaled only his discomfort in dealing with a foreign law enforcement system; it does not logically follow that he necessarily had a similar discomfort when interviewed by American investigators"). The court further noted that there is no reason to impute such a request onto American authorities when foreign officials are not held to the strictures of our constitutional laws. *Vidal*, 23 M.J. at 323; *accord United States v. Covington*, 783 F.2d 1052, 1056 (9th Cir. 1985). Trochez-Jimenez's situation is not on all fours with these cases insofar as they involve American

nationals in foreign custody, but their broader reasoning is on point—protecting the sanctity of Fifth Amendment rights does not require treating a suspect's invocation of foreign rights as a Fifth Amendment invocation that triggers *Edwards'* protection.

Not only is there no case law supporting the application of the *Edwards* rule to statements made during interrogations conducted outside the United States by foreign authorities without the involvement of United States authorities, there is no good policy reason to expand *Edwards* to statements taken after such interrogations. Simply stated, charters differ. Under some laws the right to counsel attaches at custody, *Holland*, 813 So. 2d at 1010 n.2, and under others not until after the investigative stage, *In re Terrorist Bombings of U.S. Embassies in E. Afr.*, 552 F.3d 177, 186 (2d Cir. 2008). "The merit of the *Edwards* decision lies in the clarity of its command and the certainty of its application." *Minnick v. Mississippi*, 498 U.S. 146, 151, 111 S. Ct. 486, 112 L. Ed. 2d 489 (1990). Clarity and certainty are difficult to achieve when United States' officials must refer to foreign law to decide whether a suspect has a right to have counsel present during questioning in a foreign jurisdiction and, if there indeed is a right, whether the suspect has been informed of this right and whether the suspect has invoked it. Only then might the prophylactic concerns of *Edwards* be implicated. Moreover, if counsel has been requested, it is not clear whether authorities must give *Miranda* advisements since none have been provided or are instead *prohibited* from doing so at the risk of coercing the suspect. The *Edwards* rule was meant to reinforce *Miranda*, not thwart it. *Edwards* rests on the assumption of a seamless system under which all agencies are operating under similar rules that require a suspect be at least once advised of his or her *Miranda*

-10-

rights. That assumption simply does not apply to foreign authorities operating outside the United States. For these reasons, we decline to extend *Edwards* to foreign investigations by foreign authorities investigating foreign offenses.

## CONCLUSION

We hold that a suspect's invocation of a right to counsel under a foreign charter, in a foreign investigation conducted solely by foreign authorities without United States involvement, does not trigger the prophylactic protections of *Edwards*. The lower court correctly held that King County detectives did not violate *Edwards* when they questioned Trochez-Jimenez. We affirm.

_____
Stephens, J.

WE CONCUR:

_____
Madsen, C.J.

_____

_____

_____
Fairhurst, J.

_____
J. McCloud, J. P.T.

_____
Wiggins, J.

_____
González, J.

_____
Gordon McCloud, J.