UNITED STATES, Appellee,

v.

Private First Class Edward L. WHITE-HEAD, 225–90–1208, United States Army, Appellant.

ACMR 8700178.

U.S. Army Court of Military Review.

2 May 1988.

**614**

For Appellant: Captain Stephanie C. Spahn, JAGC (argued); Lieutenant Colonel Russell S. Estey, JAGC, Major Eric T. Franzen, JAGC (on brief).

For Appellee: Captain Thomas L. Herrington, JAGC (argued); Colonel Norman G. Cooper, JAGC, Lieutenant Colonel Gary F. Roberson, JAGC, Captain Carlton L. Jackson, JAGC, Captain Jody M. Prescott, JAGC (on brief).

Before ADAMKEWICZ, LYMBURNER, and SMITH, Appellate Military Judges.

## OPINION OF THE COURT

ADAMKEWICZ, Senior Judge:

Appellant was tried by a general court-martial composed of officer and enlisted members and, contrary to his pleas, convicted of premeditated murder and forcible sodomy, violations of Articles 118 and 125, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. §§ 918 and 925, respectively. His sentence to a dishonorable discharge, confinement for life, total forfeitures, and reduction to Private E–1 was approved by the convening authority.

Before this court, appellant renews his objection to, *inter alia*, the admission of a statement made by him to agents of the U.S. Army's Criminal Investigation Command (CID) in which he confessed to killing the victim. The defense position is that the appellant exercised his right to counsel and the continued questioning of him by CID agents violated that right as protected by *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).

The record of the suppression hearing revealed that appellant was interviewed by Special Agent (SA) Roger Hosford of the CID in connection with the death of Private Burnett because appellant had been seen with the victim several hours before her death on 1 July 1986. The appellant initially denied escorting Private Burnett out of a local club and talking with her outside of the club. Agent Hosford then advised appellant of his rights under Article 31, UCMJ, 10 U.S.C. § 831, and told him that he was suspected of committing murder, rape, kidnapping and adultery. The appellant waived his rights and admitted to being with Private Burnett outside the club and to kissing her. The appellant told SA Hosford that he asked Private Burnett "to engage in sex with him" and that, when she refused, he went home. The appellant

subsequently volunteered to undergo a polygraph examination.

On 3 July 1986, appellant was transported to Frankfurt, Federal Republic of Germany, for the polygraph examination. Special Agent Miller, the polygraph examiner, explained how the examination was conducted and advised appellant of his Article 31 rights for murder and rape, which he waived. Agent Miller explained what questions he was going to ask and how the polygraph machine worked, while SA Hosford monitored the examination from an observation room. When appellant was told the polygraph result indicated deception, he admitted that he had engaged in consensual intercourse with the victim, but he denied having killed her. The appellant agreed to a second polygraph examination.

Special Agent Hosford, the agent who observed the polygraph and interview, testified that the following exchange occurred when the appellant was confronted with a second polygraph failure:

A: He [appellant] was sitting here with his elbows on his knees, his hands in front of him like this or apart, I don't remember, I believe they were folded and he was just staring straight at the floor; he was not looking at anybody particularly in the room.

Q: So he was somewhat leaned over, staring at the floor?

A: Yes, sir. Mr. Miller was approximately three feet away from him between him and the door explaining to him like he does in his normal routine—"Ed,[1] we have a problem here, you didn't pass the test" type of thing. And somewhere soon after the completion of the charts PFC Whitehead made the comment while staring at the floor, "Maybe I should get a lawyer." It appeared to me that he was thinking out loud—that's the impression I was left with in the viewing room.

Q: How did Agent Miller react to that?

A: He said something to the effect, "Well, this is your decision; it's a decision you're going to have to make." There was a slight pause and Mr. Miller said something to the effect of, "If you

didn't do anything wrong, Ed, you don't need one, right?" And there was nothing said, a slight pause, and Mr. Miller said, "Well?" Again there was a slight pause and PFC Whitehead didn't say anything. At that time and as he looked up to Mr. Miller he said, "I don't need one", and the interview continued from that point on.

Q: Are those the exact words of the two parties?

A: Yes, sir. PFC Whitehead said, "Maybe I should get a lawyer." I don't exactly remember what Mr. Miller said, it was something along the lines of "That's your decision, that's up to you." That's his normal routine. Whenever anybody indicates that—in any polygraph session I've had with Mr. Miller, if anybody indicates that they want counsel, he always says that: "That's your decision to make; I can't make that for you. That's something you'll have to do yourself." But then Mr. Miller said, "If you didn't do anything wrong, Ed, you don't need one, right?" And he said, "Well?" And Ed looked up and said, "I don't need one." Then the interview continued on.

The appellant then made an oral and later a written statement that he had killed the victim.

Special Agent Miller testified that he did not recall the appellant asking for a lawyer or mentioning the word "lawyer," nor did he remember making the remarks to the appellant about not needing an attorney if he didn't do anything wrong. When challenged with the other agent's testimony, SA Miller testified that, if the appellant "had specifically asked for a lawyer, I would have remembered that because we would have stopped the interview at that point."

The appellant testified that after he had failed the second polygraph, and Agent Miller told him, "I believe you killed her," he responded "I'd like to have a lawyer," and that SA Miller replied, "you don't need a lawyer. If you were a cold blooded killer

---

1. The appellant's first name.

you would never come in here, you would never have agreed to a polygraph test; you would have said 'hey, get your information any way that you could.'" The appellant admitted that he may have only said, "maybe I need a lawyer." In rebuttal, SA Hosford denied that the appellant had said "I'd like to have a lawyer."

At trial, after hearing the evidence and argument on the defense motion to suppress, the military judge made the following significant findings:

I find that with regard to the initial interview by Mr. Miller, there's no dispute that the accused was properly warned of his rights and that he was suspected of the offenses of murder and rape and that the accused knowingly, freely, and intelligently waived his rights and consented to a polygraph examination. I further find that after the first examination the accused was confronted by Mr. Miller and was told that he had failed the polygraph examination. The accused then knowingly, freely and intelligently consented to a second polygraph examination. I find the accused was again confronted by Mr. Miller and told that he had failed the second polygraph test. At that point I find that, as testified by Special Agent Hosford, the accused stated "Maybe I should get a lawyer." Special Agent Miller then told the accused that the decision was up to him, the accused, and added, "If you didn't do anything wrong you don't need one, right?" I further find that the accused then stated that he did not need a lawyer and intelligently agreed to continue the interview, and that he knowingly, freely and intelligently was further interviewed by Mr. Miller and made the statement which the government has offered. I further find that there was no other mention of or request for a lawyer by the accused during the entire proceedings. In resolving the matters in evidence which are squarely in conflict, I am aware, as the defense contends, that any mention whatsoever of a lawyer to a trained investigator, as Mr. Miller is, should have triggered a response and should have impressed itself upon him.

I'm also aware that these investigators know that the law is clear that when a right to counsel is invoked, interrogation must cease. It is therefore highly unlikely that an interrogation which is being observed by other trained agents would continue in the face of an unequivocal request to consult with an attorney. Weighing the testimony of all the witnesses, I find Agent Hosford's version of the facts to be credible, and I therefore find the facts as I previously indicated.

. . . .

I find that the accused's statement that "Maybe I need a lawyer" was an indecisive and equivocal expression of his statement of mind at the time that he made the statement.... The question here then is whether Mr. Miller's responses to the accused were interrogation or clarification. Clearly, advising the accused that the decision was his is the essence of the request for clarification. The question upon which admissibility turns is whether Agent Miller's further statement that if the accused didn't do anything wrong, he didn't need a lawyer, was interrogation or clarification. Now, in *Rhode Island versus Innis,* 446 U.S. 291 [100 S.Ct. 1682, 64 L.Ed.2d 297], in 1980, the Supreme Court defined interrogation as "any words or actions on the part of the police that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this test focuses upon the perceptions of the suspect rather than the attendant police." I find that the statement to the accused made by Mr. Miller was not reasonably likely to elicit an incriminating response but was rather a truism designed to prompt the accused to make an unequivocal election concerning counsel. Under any circumstances, a request for counsel in itself is not incriminating. The accused then made such an election when he stated he did not need a lawyer and continued the interview.

And consequently, I do not find a violation of *Edwards versus Arizona* and its progeny; and I find that the accused's

statements were voluntary within the meaning of Military Rule of Evidence 304 and 305. I further find that they were not obtained through the use of coercion, unlawful influence or unlawful inducement. And accordingly, the motion to suppress them is denied.

In *Miranda v. Arizona,* the Supreme Court determined that the fifth and fourteenth amendments' prohibitions against self-incrimination required that interrogation, in a custodial setting, be preceded by the advice to the accused that he has both the right to remain silent and the presence of an attorney during questioning if he so desires. *Id.,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The same rights are guaranteed to the military accused. *United States v. Tempia,* 37 C.M.R. 249 (C.M.A. 1967). If a suspect requests counsel, the interrogation must cease until an attorney is present. *Miranda v. Arizona,* 384 U.S. at 474, 86 S.Ct. at 1627–28. *See also United States v. Hill,* 5 M.J. 114 (C.M.A.1978). "[A]n accused ... having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges or conversations with the police." *Edwards v. Arizona,* 451 U.S. at 484–85, 101 S.Ct. at 1884–85. *See also United States v. Applewhite,* 23 M.J. 196 (C.M.A.1987); *United States v. Holliday,* 24 M.J. 686 (A.C.M.R.1987), *pet. denied,* Dkt. No. 59303/AR (2 Mar. 1988). Furthermore, "when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation...." *Edwards v. Arizona,* 451 U.S. at 484, 101 S.Ct. at 1884–85. The *Edwards* rule established a "bright-line" rule to protect the accused's invoked rights: once the right to counsel is invoked, subsequent communication must be initiated by the accused. *So-lem v. Stumes,* 465 U.S. 638, 104 S.Ct. 1338 79 L.Ed.2d 579 (1984). *See also United States v. Harris,* 19 M.J. 331 (C.M.A.1985), *on further consideration,* 21 M.J. 173 (C.M.A.1985). The burden is on the government to establish intentional relinquishment or abandonment of that right. *Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977).

■ Of course, this *per se* rule applies only when the right is invoked. "The fundamental purpose of the Court's decision in *Miranda* was 'to assure that *the individual's right to choose* between speech and silence remains unfettered throughout the interrogation process.'" *Connecticut v. Barrett,* 479 U.S. 523, 107 S.Ct. 828, 831, 93 L.Ed.2d 920 (1987), quoting *Miranda,* 384 U.S. at 469, 86 S.Ct. at 1625 (emphasis added by *Barrett* Court). We reject appellant's argument that he had unequivocally invoked his right to counsel. It is clear that, at best, his remarks were an ambiguous request for counsel. The issue before us, i.e., the proper approach to take when an accused makes an equivocal invocation of his right to counsel, has been left unresolved by the Supreme Court in *Smith v. Illinois,* 469 U.S. 91, 96 n. 3, 105 S.Ct. 490, 493 n. 3, 83 L.Ed.2d 488 (1984).

We decline to adopt the position taken by some other courts that all questioning must cease once a suspect mentions the word "counsel" or "attorney". These courts believe that compliance with the "rigid" rule [2] announced in *Miranda* requires that once a defendant indicates *in any manner* and at any stage of the process that he wishes to consult with an attorney before speaking, all questioning,[3] or its functional equivalent,[4] must stop. Under this view, the intended prophylaxis of *Miranda* would be subverted if any equivocal invocation of rights were resolved against the defendant. Statements or questions by a suspect to officials that "I probably ought to talk to a lawyer," "Do you think I need an attorney?", "Is an attorney available?"

---

**2.** *Fare v. Michael C.,* 442 U.S. 707, 719, 99 S.Ct. 2560, 2568–69, 61 L.Ed.2d 197 (1979).

**3.** *Miranda,* 384 U.S. at 444–445, 86 S.Ct. at 1612.

**4.** *Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980).

"Maybe I should have an attorney," have all been held to constitute a sufficient request for counsel requiring cessation of further questioning. *See, e.g., Maglio v. Jago*, 580 F.2d 202 (6th Cir.1978); *Ochoa v. State*, 573 S.W.2d 796 (Tex.Crim.App.1978); *People v. Alexander*, 79 Mich.App. 495, 261 N.W.2d 63 (1977), *cert. denied sub nom Michigan v. Borman*, 436 U.S. 958, 98 S.Ct. 3073, 57 L.Ed.2d 1123 (1978); *People v. Superior Court of Mono County*, 15 Cal.3d 729, 125 Cal.Rptr. 798, 542 P.2d 1390 (Cal.1975), *cert. denied*, 429 U.S. 816, 97 S.Ct. 58, 50 L.Ed.2d 76 (1976).

We believe that these cases rest upon too broad a reading of *Miranda* and *Edwards*. Further, we do not read recent cases from the Supreme Court as requiring such an expansive interpretation. In *Connecticut v. Barrett*, 107 S.Ct. 828, the Supreme Court rejected the Connecticut Supreme Court's reading of *Miranda* and held that a fully-warned defendant, who refuses to sign anything unless his attorney was present, has not invoked his right to counsel as to an oral statement. The Court held that an unambiguous limited request for counsel is to be construed according to its plain meaning. *Id.* at 832. In other words, a limited request need not be interpreted by police officials as an unlimited assertation for representation by counsel. In *Colorado v. Spring*, 479 U.S. 564, 107 S.Ct. 851, 93 L.Ed.2d 954 (1987), and *Arizona v. Mauro*, 481 U.S. 520, 107 S.Ct. 1931, 95 L.Ed.2d 458 (1987), the Supreme Court also declined to extend the *Miranda–Edwards* holdings.

 Where there is an ambiguous invocation, we deem it appropriate for the authorities to inquire whether the suspect is electing to speak. As the learned military judge aptly noted, the issue to be decided is "whether Agent Miller's further statement that if the accused didn't do anything wrong, he didn't need a lawyer, was interrogation or clarification." We find support in the record for his factual findings as to what occurred in the interrogation room and agree with the military judge that, when an equivocal request for counsel has been made, as here, reasonable attempts at clarification are appropriate to determine whether there has been a knowing or intelligent waiver of the right to representation. However, we disagree with his ruling on the scope and legal effect of the CID agent's remarks. He failed to recognize that the appellant was being subjected to continued custodial questioning. What the military judge referred to as a "truism" was, in fact and in law, the equivalent of further "questioning" amounting to custodial interrogation.

The technique used by the CID here is a classic textbook method of interrogation. In Inbau and Reid, *Criminal Interrogation and Confessions* (1962), a recognized manual of police interrogation procedures, the authors instruct criminal investigators how to handle a suspect who declines to talk or expresses a desire to see an attorney or a relative:

> [C]oncede to him the right to remain silent. This usually has a very undermining effect. First of all, he is disappointed in his expectation of an unfavorable reaction on the part of the interrogator. Secondly, a concession of this right to remain silent impresses the subject with the apparent fairness of his interrogator.
>
> After this psychological conditioning, the interrogator should then proceed to point out to the subject the incriminating significance of his refusal to talk.

*Id.* at 111.[5] It is apparent from the record that the agent was not in fact attempting to clarify the accused's request. Rather the agent was attempting to dissuade the appellant from the proper exercise of his right to counsel. In a custodial setting, *Miranda* teaches us that the use of such psychological ploys, no less than express

---

**5.** Subsequent editions of this handbook recognize that when a suspect states that he wants a lawyer, there can be no interrogation absent his initiation of a waiver of that right, but that a request for someone other than a lawyer is not an assertion of the *Miranda* right. Inbau, Reid and Buckley, Criminal Interrogation and Confessions, 228 (3d ed. 1986). *See also* White, *Police Trickery in Inducing Confessions,* 127 U.Pa.L.Rev. 581 (1979).

questioning, amounts to interrogation.[6]

In *Thompson v. Wainwright,* 601 F.2d 768 (5th Cir.1979), the accused was advised of his rights, waived them, stated that he wanted to make a statement but first wanted to tell his story to an attorney. The police officer responded to Thompson that an attorney could not relate his story to the police and that an attorney would probably tell him not to talk to the police. Thompson then made a statement used against him at trial. The Fifth Circuit ruled that the statement should have been suppressed: the subsequent police remarks to Thompson were not limited to clarifying Thompson's equivocal request.

> [T]he limited inquiry permissible after an equivocal request for legal counsel may not take the form of an argument between interrogators and suspect about whether having counsel would be in the suspect's best interests or not. Nor may it incorporate a presumption by the interrogator to tell the suspect what counsel's advice to him would be if he were present. Such measures are foreign to the purpose of clarification, which is not to persuade but to discern.

*Id.* at 772. Explanation of the consequences of talking to counsel is "perilous and, if given, must not be materially incorrect." *Id. See United States v. Cherry,* 733 F.2d 1124 (5th Cir.1984), *cert. denied,* 107 S.Ct. 932, 93 L.Ed.2d 983 (1987); *Nash v. Estelle,* 597 F.2d 513 (5th Cir.1979) (en banc), *cert. denied,* 444 U.S. 981, 100 S.Ct. 485, 62 L.Ed.2d 409 (1979).

We hold that, when a properly warned person manifests during the interrogation process indecision in the exercise of his rights, an interviewer may question the suspect only as to whether he does or does not waive counsel. This limitation on questioning applies irrespective of whether the suspect has previously waived representation. The inquiry may not be utilized to dissuade a suspect from exercising his or her rights. The advice given by the agent here was incorrect,[7] constituted subtle but continued interrogation, and served to mislead the appellant and to undermine his ability to invoke his right to counsel.[8] The statement by the appellant was obtained in violation of constitutional standards for protection of that privilege. The approach we take will "assure that the individual's right to choose between speech and silence remains unfettered throughout the interrogation process,"[9] and will protect against any police overreaching,[10] without hampering legitimate criminal investigative practices.

Under similar circumstances, in the face of such an ambiguous request, the proper conduct for an investigator is demonstrated in *United States v. Fouche,* 833 F.2d 1284 (9th Cir.1987). In *Fouche,* the accused was read his rights, which he waived, and answered some questions before stating that he "might want to talk to a lawyer" and that he did want to make a phone call. The Federal Bureau of Investigation (FBI) agents ceased questioning and permitted

---

**6.** Even accepting as a fact that the agent was acting in good faith, the result remains the same. The safeguards announced in *Miranda* and *Edwards* were designed to preclude this type of case. *Cf. United States v. Tempia,* 37 C.M.R. at 258 ("the testimony, taken as a whole, indicates not that accused did not desire a lawyer's services but that he had been frustrated in obtaining advice on whether to exercise his rights...."); *United States v. Goodson,* 22 M.J. 22 (C.M.A.1986) (subsequent interrogator's lack of knowledge of earlier request for counsel is immaterial).

**7.** The advice given the appellant by the agent as to when counsel was needed was anything but a "truism." It was just plain wrong and subverted appellant's right to representation. The right to counsel is not triggered by the guilt, perceived

or actual, of the suspect. *See generally* Dept. of Army, Pamphlet No. 27–22, Legal Services—Military Criminal Law Evidence, Chapters 26 and 27 (15 Jul. 1987).

**8.** As pointed out in *United States v. Tempia,* 37 C.M.R. at 259, a suspect is entitled to "a lawyer who is peculiarly and entirely the accused's own representative; who owes him total fidelity; to whom full disclosure may be solely made in a privileged atmosphere; and from whom accused can learn with confidence a proper course of action."

**9.** *Miranda,* 384 U.S. at 469, 86 S.Ct. at 1625.

**10.** *See Edwards,* 451 U.S. at 484, 487, 101 S.Ct. at 1886; *Innis,* 446 U.S. at 299–300, 100 S.Ct. at 1689.

him a phone call. He called his wife and then spoke again to the FBI agent, asking what the agent thought he should do. The agent responded that he was not a lawyer and would not give advice and then asked Fouche if he wanted to make a statement. Fouche replied that he did and the resulting confession was used against him. The court found that Fouche's remark about possibly wanting a lawyer was an equivocal request for counsel but the agent properly cut off the questioning and then clarified the accused's wishes before continuing with questioning. The Ninth Circuit noted that the agent

> never suggested to Fouche that he should not consult a lawyer.. When Fouche asked Agent Alba what he should do, the agent merely replied— truthfully—that he was not a lawyer and therefore would not give legal advice. . . . Agent Alba did not mislead Fouche about the desirability of retaining a lawyer, nor did he attempt to persuade Fouche to waive his guaranteed right to counsel.

*Id.* at 1288. Military investigators would be well advised to follow such example.

■ The admission of appellant's statement, taken in violation of his right to counsel, was error. Since the improperly admitted statement was a substantial part of the government's case against the appellant, we cannot say that its erroneous admission was harmless beyond a reasonable doubt. *United States v. Remai*, 19 M.J. 229 (C.M.A.1985); *see also Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

The findings of guilty and the sentence are set aside. A rehearing may be ordered by the same or a different convening authority.

Judge LYMBURNER and Judge SMITH concur.