UNITED STATES

v.

**Staff Sergeant Donald W. McLAREN, FR547–35–0428, United States Air Force.**

ACM 28996.

U.S. Air Force Court of Military Review.

Sentence Adjudged 11 Aug. 1990.

Decided 26 March 1992.

Appellate Counsel for the Appellant: Captain David D. Jividen (argued), Colonel Jeffrey R. Owens, Major John V. Sullivan, and Major Paul M. Dankovich.

Appellate Counsel for the United States: Major Ann M. Mittermeyer (argued), Colonel William R. Dugan, Jr., Lieutenant Colonel Brenda J. Hollis, Major Paul H. Blackwell, Jr., and Captain Carlos L. McDade.

Before LEONARD, RIVES, and JAMES, Appellate Military Judges.

## OPINION OF THE COURT

RIVES, Judge:

What must investigators do when a suspect who has waived his rights says, "I think I want a lawyer"? Appellant contends his Constitutional rights were violated when his interview resumed without a clarification of the statement. We disagree with that and his other assertions of error and affirm.

After the motion to suppress his confession was denied, the appellant, Staff Sergeant Donald W. McLaren, entered a conditional guilty plea [1] to raping and attempting to rape one of his stepdaughters, and committing sodomy and a variety of indecent acts with both of his stepdaughters. *See* R.C.M. 910(a)(2); *United States v. Forbes*, 19 M.J. 953 (A.F.C.M.R.1985). He was sentenced by officer and enlisted members to a dishonorable discharge, confinement for 35 years, forfeiture of $424 pay per month for 420 months, and reduction to E–1. Complying with a pretrial agreement, the convening authority reduced the period of confinement to 15 years and approved the other aspects of the sentence.

---

1. We cannot determine whether the conditional plea was properly accepted in this case. The record fails to disclose whether the ruling on the suppression motion was case-dispositive; the victims might well have testified, and the confession might have been superfluous evidence. If so, the conditional plea simply preserved for appeal an issue which was moot and yet which carried in it seeds that could have grown into an appellate reversal. We criticized this practice in *United States v. Phillips*, 32 M.J. 955 (A.F.C.M.R.1991), noting that one solution on appeal in such a case is to set the plea aside as improperly accepted. *See* R.C.M. 910(a)(2). This case was tried before we decided *Phillips*, before this problematic aspect of conditional pleas was revealed. However, as we noted, "Staff judge advocates and military judges should not permit conditional pleas that only preserve issues that would not terminate the prosecution...." *Phillips*, 32 M.J. at 957.

## I

In December 1986, while stationed at Vandenberg Air Force Base, California, McLaren married V. The couple moved into base housing with V's two daughters, ages 11 and 5. Within a few months, McLaren began an abhorrent sexual escapade with his stepdaughters, progressing from initial experiments of indecent acts with the younger girl to forcible acts of sodomy with both girls, and eventually to raping the older girl. His crimes continued through his reassignment to San Vito Air Station, Italy, in June 1988, until he was caught in April 1990.

On 15 April 1990, the Air Force Office of Special Investigations (OSI) detachment at San Vito received information about McLaren's crimes. Agents Sarantis and Bianco, both 3–year veterans of the OSI, investigated the case. On 16 April, the agents interviewed the older girl at the base clinic. The following afternoon, the agents went to McLaren's base residence, identified themselves in his presence, explained that they needed to talk with V about her older daughter, and transported V to the clinic. McLaren followed the agents to the clinic in a separate car, approached them in the clinic parking lot, and stated his desire to talk with them. Without indicating the true subject of their investigation, Sarantis told McLaren they first needed to speak with V and the older girl and would talk to him later. McLaren stated he would be available and returned home. Later that afternoon, after interviewing both girls and medical personnel, the agents again went to McLaren's house, invited him to speak with them, and transported him to the base clinic.

At the clinic, the agents took McLaren to an unoccupied conference room where Sarantis formally re-identified himself, informed McLaren of the offenses of which he was suspected, and advised him of his rights by reading an Air Force Form 189 (rights advisement card). After being informed of his right to counsel, McLaren responded to the agent's question by stating he did not want a lawyer. He affirma-tively waived his right to remain silent and agreed to answer questions.

After some introductory questions designed to put McLaren at ease, Sarantis asked him when he had first had sex with his older stepdaughter. McLaren replied, "These things happen." Sarantis then repeated the question. McLaren looked down and said something to the effect, "I think I want a lawyer," or "I think I need to talk to a lawyer." After a brief pause, Sarantis stated, "Yes, this is a serious matter," and Agent Bianco said, "Yes, this is a decision you'll have to make. We can't force you to stay here. You need to decide what you want to do." After a brief period of silence and with no further questions, McLaren began an emotional confession. The agents resumed their questioning, continued for about an hour, then adjourned to the OSI offices where they assisted McLaren in preparing a written statement. Before he signed the statement, the agents once again formally advised him of his rights, including his right to counsel. McLaren waived each of his rights by initialing and signing the form.

## II

Appellant contends that his Fifth Amendment rights were violated when the military judge refused to suppress his statements to the OSI after he said, "I think I want a lawyer," or words to that effect. He asserts the OSI agents erred by failing to either stop the interview or clarify his request for counsel. Under the facts of this case, we disagree.

The Fifth Amendment to the Constitution provides: "No person ... shall be compelled in any criminal case to be a witness against himself...." To enforce the promise of this venerable safeguard, both legislative and judicial remedies have evolved to ensure that individual rights are respected during police operations and that personal will is not overborne by investigative zeal.

For those in the military, Article 31(a) of the Uniform Code of Military Justice, 10 U.S.C. § 831(a) reinforces the Fifth Amendment guarantee by forbidding anyone subject to the code from "compel[ling] any

person to incriminate himself or to answer any question the answer to which may tend to incriminate him." Article 31(b) directs that anyone who suspects another of an offense may not question him without first informing him of the offenses of which he is suspected, his right to remain silent, and the possibility that any statement he makes may be used against him in a court-martial. Article 31(d) provides the enforcement mechanism, barring the admission in evidence of any statement received in violation of the article.

In its landmark case of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court set forth the familiar rights advisement requirements whenever police conduct a "custodial interrogation." Included is the requirement that police advise the suspect of his right to the presence of counsel during questioning. The Court of Military Appeals applied *Miranda* to military investigations in *United States v. Tempia,* 16 U.S.C.M.A. 629, 37 C.M.R. 249 (1967); *see also* Mil.R.Evid. 305(d). Thus, any statement obtained during a custodial interrogation[2] in violation of a suspect's right to counsel is inadmissible in a court-martial.

In *Miranda,* the Supreme Court ruled that if a suspect "indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning." 384 U.S. at 444–45, 86 S.Ct. at 1612–13. Later, the Court established the bright-line rule that "an accused ... having expressed his desire to deal with police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communications, exchanges, or conversations with the police." *Edwards v. Arizona,* 451 U.S.

477, 484–85, 101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378 (1981); *see also United States v. Harris,* 19 M.J. 331 (C.M.A.1985) (applying *Edwards* to the military). In *Smith v. Illinois,* 469 U.S. 91, 98, 105 S.Ct. 490, 494, 83 L.Ed.2d 488 (1984), the Court noted, "Where nothing about the request for counsel or the circumstances leading up to the request would render it ambiguous, all questioning must cease."

■ We must first determine whether McLaren's comments were an unambiguous request for counsel. To do so, we examine the ordinary meaning of his words within the context of the circumstances leading up to his remark, but not his statements or actions that followed. *Smith,* 469 U.S. at 100, 105 S.Ct. at 495. We find that the words "I think I want a lawyer" or "I think I need to talk to a lawyer" did not signal a definite intention or desire on McLaren's part, but simply hinted that he was considering his options. McLaren's statement alluding to his possible desire to consult with an attorney amounts at most to an *equivocal* request for counsel.

Both *Edwards* and *Oregon v. Bradshaw,* 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983), a subsequent Supreme Court decision discussing an effective waiver of *Miranda* rights and reinitiation of interrogation by an accused, involved *un*equivocal invocations of the right to counsel. McLaren's equivocal invocation of the right to counsel will first be tested against the *Edwards* standard.

*Edwards* requires investigators to stop questioning after a suspect invokes his right to counsel, unless the suspect "initiates" further exchanges with the police. 451 U.S. at 484–85, 101 S.Ct. at 1884–85. In *Bradshaw,* the Supreme Court reaffirmed *Edwards,* clarifying "initiation"

**2.** After our preliminary examination of this record, we specified the issue of whether the interrogation here was custodial as required to implicate the right to counsel under *Miranda.* In his findings of fact on the suppression motion, the military judge found that McLaren was properly advised of both his Article 31 rights and his rights to counsel. Inherent in the latter finding is a determination that the accused was in fact "in custody" at the time of the interroga-

tion. "Custody" is evaluated by "how a reasonable man in the suspect's position would have understood his situation." *Berkemer v. McCarty,* 468 U.S. 420, 442, 104 S.Ct. 3138, 3151, 82 L.Ed.2d 317 (1984). Applying this standard to the facts, we find that the interrogation of appellant was custodial, and hence the advisement as to the right to the presence of counsel was appropriate.

to mean inquiries or statements that "represent a desire on the part of an accused to open up a more generalized discussion relating directly or indirectly to the investigation." 462 U.S. at 1045, 103 S.Ct. at 2835; *see also United States v. Applewhite,* 23 M.J. 196 (C.M.A.1987); *United States v. Groh,* 24 M.J. 767 (A.F.C.M.R.1987). The Court has also explained that the prosecution must independently establish both initiation of the discussion and a knowing, intelligent, and voluntary waiver of the previously invoked right. *Moran v. Burbine,* 475 U.S. 412, 421, 106 S.Ct. 1135, 1140, 89 L.Ed.2d 410 (1986); *Bradshaw,* 462 U.S. at 1044–46, 103 S.Ct. at 2834–35. The existence of a waiver depends upon " 'the particular facts and circumstances surrounding [the] case, including the background, experience, and conduct of the accused.' " *Id.* at 1046, 103 S.Ct. at 2835 (quoting *North Carolina v. Butler,* 441 U.S. 369, 374–75, 99 S.Ct. 1755, 1757–58, 60 L.Ed.2d 286 (1979) and *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)). A waiver need not be explicit, but may be inferred from the suspect's actions and statements. *Butler,* 441 U.S. at 373, 99 S.Ct. at 1757.

■ McLaren's confession followed a period of silence after Agent Bianco told him it was his decision as to how to proceed. Although his confession occurred at the same location and within a relatively short period of time after the agents stopped their questioning, it was in fact voluntary, uncoerced, and unprompted by the agents' intervening remarks. Hence, we find that McLaren reinitiated the interrogation, as occurred in *Bradshaw.* Examining these circumstances within the context of his background, experience, and previous conduct during the investigation, we further find that he knowingly, intelligently, and voluntarily waived his right to counsel. Though he did not articulate it as such, he clearly decided to continue without counsel. That decision was the product of his reflection, initiative, and willingness to cooperate.

■ When a suspect unequivocally expresses a desire for an attorney, investigators must halt all questioning. However, as in the case before us, where a suspect's remarks are vague and ambiguous, the appropriate response is less certain and is not clearly governed by the *Edwards* rule. The Supreme Court has explicitly declined to resolve the broader issue of whether an equivocal statement constitutes an invocation of the right to counsel: *Connecticut v. Barrett,* 479 U.S. 523, 529–30 n. 3, 107 S.Ct. 828, 832–33 n. 3, 93 L.Ed.2d 920 (1987); *Smith,* 469 U.S. at 95–96, 105 S.Ct. at 492–493.

Courts have adopted three different approaches to resolving cases involving the equivocal assertion of rights. *See generally* Annotation, *What Constitutes Assertion of Right to Counsel Following Miranda Warnings—Federal Cases,* 80 A.L.R. Fed. 622 (1986); Annotation, *What Constitutes Assertion of Right to Counsel Following Miranda Warnings—State Cases,* 83 A.L.R. 4th 443 (1991). Some courts read *Miranda* liberally and require that even upon a vague reference to an attorney or ambiguous behavior evidencing a possible desire for counsel, all questioning must cease. *E.g., People v. Randall,* 1 Cal.3d 948, 83 Cal.Rptr. 658, 464 P.2d 114 (1970). Others take a more conservative approach, holding that there exists a "threshold of clarity" beyond which officers must halt an interrogation. *E.g., People v. Krueger,* 82 Ill.2d 305, 45 Ill.Dec. 186, 412 N.E.2d 537 (1980), *cert. denied,* 451 U.S. 1019, 101 S.Ct. 3009, 69 L.Ed.2d 390 (1981). Still other courts, in an attempt to balance the rights of an accused with prosecutorial interests, require that after an equivocal reference to counsel, investigators must limit further questioning to inquiries seeking clarification of the suspect's desires. *E.g., United States v. Fouche,* 833 F.2d 1284 (9th Cir.1987), *cert. denied,* 486 U.S. 1017, 108 S.Ct. 1756, 100 L.Ed.2d 218 (1988).[3] This procedure avoids

3. A majority of the Circuit Courts of Appeal now follow this approach. *See United States v. Porter,* 776 F.2d 370 (1st Cir.1985); *United States v.* *Gotay,* 844 F.2d 971 (2nd Cir.1988); *United States v. Riggs,* 537 F.2d 1219 (4th Cir.1976); *United States v. Cherry,* 733 F.2d 1124 (5th Cir.

the inflexible rule that precludes further questioning after any vague reference to counsel, but provides investigators and the courts with a standard that protects suspects who want an attorney but "whose requests fail to meet an arbitrary threshold of clarity." *Hampel v. State,* 706 P.2d 1173, 1180 (Alaska App.1985). Along with the Army Court of Military Review, this Court has adopted the latter approach, permitting questions that seek clarification. *See United States v. Mathis,* 31 M.J. 726 (A.F.C.M.R.1990); *United States v. Palmer,* 29 M.J. 929 (A.F.C.M.R.1989); *United States v. Whitehead,* 26 M.J. 613 (A.C.M.R. 1988).

In *Whitehead,* the accused commented during a post-polygraph interview, "Maybe I should get a lawyer." The interviewing agent then remarked, "Well this is your decision; it's a decision you're going to have to make." After a brief pause, the agent continued, "If you didn't do anything wrong, Ed, you don't need one, right?" 26 M.J. at 615. The Army Court found the accused's comments to be an equivocal request for counsel, and ruled that investigators had the responsibility to make reasonable attempts at clarification if they desired to continue questioning. *Id.* at 618. The court implicitly accepted the trial judge's ruling that the agent's initial remarks advising the accused of his decision were "the essence of the request for clarification." *Id.* at 616. The court then focused on the final remark and determined the investigator was trying to dissuade the accused from exercising his right to coun-sel. Thus, the court held it was not an attempt at clarification, but rather "subtle but continued interrogation" that "served to mislead the appellant and to undermine his ability to invoke his right to counsel." *Id.* at 619.

■ We now turn our attention to the OSI agents' responses in this case, evaluating their actions in light of their responsibility to cease questioning and to seek clarification. The agents' remarks were neutral[4] in content and spontaneous in nature. If anything, Agent Sarantis' remark about the seriousness of the offenses would tend to encourage a suspect to stop the interview and consult with counsel. Agent Bianco's remarks reinforcing the need for appellant to make a decision can reasonably be viewed as an attempt to prompt appellant to clarify his desires. Following careful scrutiny of the record, we conclude that the agents' remarks were neither designed to nor had the effect of misleading, dissuading, or further interrogating appellant. Hence, the agents did not violate their responsibility to halt the interrogation.[5]

■ In sum, after McLaren uttered his equivocal reference to counsel, the investigators ceased their interrogation. Their subsequent comments were neutral and provided McLaren the opportunity to clarify his vague statement. McLaren reinitiated the interrogation by resuming the conversation, even though he did not explicitly clarify his earlier reference to counsel. Focusing on this narrow factual scenario, we

1984); *Smith v. Endell,* 860 F.2d 1528 (9th Cir. 1988), *cert. denied,* — U.S. —, 111 S.Ct. 510, 112 L.Ed.2d 522 (1990); *Towne v. Dugger,* 899 F.2d 1104 (11th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 536, 112 L.Ed.2d 546 (1990).

4. *Cf. Hall v. State,* 255 Ga. 267, 336 S.E.2d 812, 819 (1985) (agents' remarks found to be "neutral").

5. Our holding on this issue is specific to the facts in this case. We strongly encourage investigators (and those responsible for their training) to follow the guidance of *Fouche* and *Mathis, supra.* In *Fouche,* when the suspect indicated he "might want to talk to a lawyer" and that he wanted to make a telephone call, Federal Bureau of Investigation agents immediately stopped the interrogation, permitted him to make a call in private, readvised him of his rights, and asked him whether he understood his rights and wished to waive them. Before resuming the interrogation, the agents ascertained that the suspect had not telephoned an attorney. 833 F.2d at 1285–86. In *Mathis,* OSI agents chose the most direct approach to resolve the suspect's confused reference to counsel: "[I]f you want a lawyer, we'll stop right now and I'll get you a lawyer.... *Do you want a lawyer?*" 31 M.J. at 727 (emphasis added). The agents' conduct in these cases stands above reproach and avoids suspicion of ulterior motive or design. Their conduct provides a model for investigators who are confronted with ambiguous behavior or an unclear reference to counsel.

hold that where a suspect voluntarily reinitiates discussions related to the investigation, he effectively clarifies the earlier ambiguous request for counsel. At that point, investigators have no further obligation to pursue the suspect's indecision and may resume the interview. McLaren's confession was otherwise voluntary and properly admitted in evidence against him. His Fifth Amendment rights were not violated.

### III

■ Appellant next alleges the military judge erred when he denied a defense challenge for cause against a court member who refused to consider the sentencing option of "no punishment."

In response to the defense counsel's initial inquiries on *voir dire* of the panel, the member in question indicated he could not consider imposing no punishment.[6] During individual *voir dire* by counsel, he first reiterated his earlier statement, then indicated that upon a review of all the facts, he could consider a level of punishment that was not very severe. He also stated he did not have any moral conviction that would inflame his passions and lead him to recommend a severe sentence. Additionally, in response to a question by the military judge, he replied that he could discuss and deliberate with the other members and vote on an appropriate sentence based on the facts presented and the law as given by the military judge.

■ It is axiomatic that an accused is entitled to be tried by court members who will keep an open mind and arrive at an appropriate sentence in accordance with the evidence presented at trial and the law as announced by the trial judge. *United States v. Reynolds*, 23 M.J. 292 (C.M.A. 1987). To help assure courts-martial are free from any taint of illegality, unfairness, or partiality, R.C.M. 912(f) delineates a number of bases for challenge and removal for cause.

■ As the Court of Military Appeals has urged, we strongly encourage military judges to be liberal in granting challenges under this rule. *Reynolds*, 23 M.J. at 294; *United States v. Smart*, 21 M.J. 15, 21 (C.M.A.1985). Recognizing, however, the advantageous position of the military judge in assessing potential bias, as well as the many factors that he must balance quickly and without opportunity for reflection, we will reverse a ruling on a challenge only if we find a clear abuse of discretion. *United States v. Hawks*, 19 M.J. 736 (A.F.C.M.R.1984).

To find an abuse of discretion requires much "more than a difference in ... opinion.... The challenged action must ... be found to be 'arbitrary, fanciful, clearly unreasonable,' or 'clearly erroneous' in order to be invalidated on appeal." *United States v. Yoakum*, 8 M.J. 763, 768 (A.C.M.R.1980), *aff'd on other grounds*, 9 M.J. 417 (C.M.A.1980), *quoting United States v. Glenn*, 473 F.2d 191, 196 (D.C.Cir. 1972); *see also United States v. Travers*, 25 M.J. 61, 62 (C.M.A.1987). If we find such abuse, we do not hesitate to set aside a conviction. *See United States v. Abdelkader*, 34 M.J. 605 (A.F.C.M.R.1992). In

---

**6.** The defense counsel's opening *voir dire* questions were:

Q: Would all of you agree with me that what you have in front of you and what Sergeant McLaren has pled guilty to and been found guilty of are some of the most serious offenses known to the law?

Q: The reason I ask you that at this point in the trial, according to the judge's instructions, you are not to have any particular sentence in mind, either lenient or very severe, or any kind of a sentence.... [A]t one point in the trial, the judge is going to tell you that no punishment is an option. Without regard to whether that is a reasonable or a ridiculous idea at this point in time, without having any

presentation of evidence, is there anyone on this jury that can honestly and seriously consider no punishment just by what you've read in front of you?

The defense counsel polled all eleven members individually on their answers to the second question. Nine of the eleven responded that they could *not* consider the option. The defense counsel then pursued the issue during individual *voir dire* of four of the members, challenged two for cause, and, upon the judge's denial of the challenges, exercised his peremptory challenge against one of the two. The remaining challenged member is the subject of the assigned error.

this case, however, we do not find that the trial judge abused his discretion.

A ground for challenge exists if a member demonstrates an "inelastic attitude" toward sentencing responsibilities. *United States v. Davenport*, 17 M.J. 242, 245 (C.M.A.1984); *United States v. Tippit*, 9 M.J. 106, 107 (C.M.A.1980). One is not automatically disqualified, however, because of an expression of an unfavorable inclination toward a particular offense. *Reynolds*, 23 M.J. at 294; *United States v. Fort*, 16 U.S.C.M.A. 86, 90, 36 C.M.R. 242, 245–46 (1966). Similarly, an articulation of a predisposition toward adjudging a particular form of punishment is not in and of itself disqualifying. *United States v. McGowan*, 7 M.J. 205, 206 (C.M.A.1979); *United States v. Blevins*, 27 M.J. 678, 680 (A.C.M.R.1988). "Rather, the test is whether the member's attitude is of such a nature that he will not yield to the evidence presented and the judge's instructions." *McGowan*, 7 M.J. at 206. Additional *voir dire* is the vehicle for clarifying a member's attitude toward sentencing. *Smart*, 21 M.J. at 19–20.

In this case, the member's initial response, seeming to foreclose the "no punishment" option, was predicated solely upon his review of the charges of which appellant stood convicted. His bluntly honest answer voiced a sentiment that is difficult to avoid when one is confronted with a naked description of appellant's crimes.[7] His subsequent responses, though, showed that he would review the evidence before reaching a decision and would follow the judge's instructions. Although the member could have been questioned more thoroughly by the military judge, we are satisfied that he did not have an "inelastic attitude" toward punishment. Hence, we find that the military judge did not abuse his discretion in denying the challenge.[8]

## IV

Finally, appellant contends the military judge erred when, in response to a court member's question, he informed the members of the existence of parole and good time credit. The following occurred during a break from deliberations:

PRES: The final question, Your Honor, is concerning parole. Is there parole from a military sentence?

MJ: There is parole within the military and the federal system, both, and there's also good time credit. But I'm not going to instruct you in detail on that procedure because it's nothing that you can do anything about and you can't take that into consideration in adjudging what you believe to be an appropriate sentence.

PRES: I see.

MJ: That's within the purview of other authorities.

PRES: Very good, Sir. . . .

In response to a defense request for further instructions, the military judge reemphasized to the members that those factors were not for their consideration:

7. The Court of Military Appeals, reviewing a general court-martial involving a sexual assault on an elderly woman, commented:

   Some offenses are so heinous or so repugnant to common decency that the first thought of a court member might well be that the accused should, if convicted, be sentenced to a punitive discharge. A provisional impression of this kind is practically unavoidable.

   *Fort*, 16 U.S.C.M.A. at 89, 36 C.M.R. at 245.

8. Although we do not find that the judge abused his discretion, another matter requires our attention. In an out-of-court hearing prior to individual *voir dire,* the military judge stated that "the mere statement in the abstract that the member cannot on the basis of findings of guilty of these charges entertain the possibility of no punishment is not in my view a disqualifying factor." *See United States v. Deain*, 5 U.S.C.M.A. 44, 49, 17 C.M.R. 44, 49 (1954). In his ultimate ruling on the challenges for cause, the judge referred to the earlier comment as a basis for denial. The judge's comment was an incomplete paraphrase of the law as stated in *McGowan*, 7 M.J. at 206. Despite the comment, the military judge invited the defense counsel to pursue the issue during individual *voir dire* of the members. Since the issue was explored through further questioning by both trial and defense counsel and the military judge, we do not find the judge's misstatement of the law to be prejudicial error. His ultimate ruling denying the challenges, though referencing the earlier comment, was within the broad range of judicial discretion.

MJ: Right. As I've indicated, you should adjudge what you believe to be an appropriate sentence without relying on mitigating action by any authority in the case.

PRES: Your point has been taken, Your Honor.

■ The administrative procedures that permit penal authorities to adjust a prisoner's release date are collateral to the sentencing function. Hence, when fashioning an appropriate sentence, the court should not speculate as to any administrative relief that might be granted during confinement. It is well-established that an accused should be sentenced without regard to any collateral administrative consequences of the punishment. *United States v. Henderson,* 29 M.J. 221 (C.M.A.1989); *United States v. Murphy,* 26 M.J. 454 (C.M.A.1988); *United States v. Griffin,* 25 M.J. 423 (C.M.A.), *cert. denied,* 487 U.S. 1206, 108 S.Ct. 2849, 101 L.Ed.2d 886 (1988); *United States v. Quesinberry,* 12 U.S.C.M.A. 609, 612, 31 C.M.R. 195, 198 (C.M.A.1962); *but cf. United States v. Rosato,* 32 M.J. 93 (C.M.A.1991) (error to bar accused from commenting in unsworn statement on collateral matters about return-to-duty program).

It is not necessarily error, however, for a military judge to answer court members' questions on collateral consequences of sentencing alternatives. *Griffin,* 25 M.J. at 425; *United States v. Nixon,* 30 M.J. 501, 506 (A.F.C.M.R.1989).[9] In this case, the military judge merely acknowledged the existence of two related mechanisms for administrative relief—one of which the members had apparently discussed. In subsequent comments, he clearly directed the members not to consider those or any similar extraneous matters during their deliberations. We conclude that this explicit

guidance was appropriate and adequate to preclude any improper consideration by the members. *See United States v. Ricketts,* 1 M.J. 78 (C.M.A.1975); *United States v. Cerniglia,* 31 M.J. 804, 806 (A.F.C.M.R. 1990).

### V

The approved findings of guilty and the sentence are correct in law and fact and, on the basis of the entire record, are

AFFIRMED.

Senior Judge LEONARD and Judge JAMES concur.

---

**9.** Military judges must tread carefully when responding to a court member's question on such matters. Ordinarily, the appropriate reply is simply to affirm that "collateral consequences are not germane" to the sentencing process. *Griffin,* 25 M.J. at 424. With the accused's permission, though, the judge may venture further. However, that path is fraught with hazards. The answer must be clear, despite the extemporaneity of the occasion. *Id.* It must also be

accurate and complete. This is of particular concern, since military judges are less likely to be fully informed as to collateral consequences. *Griffin,* 25 M.J. at 425 (concurring opinion by Everett, C.J.). Finally, the potential for unnecessary confusion, resulting from inundating the members with administrative trivia, must be avoided. *Quesinberry,* 12 U.S.C.M.A. at 612, 31 C.M.R. at 198; *see* Mil.R.Evid. 403.