UNITED STATES, Appellee,

v.

Sergeant Eduardo E. JOSEPH, 577–82–7213, United States Army, Appellant.

ACMR 9101011.

U.S. Army Court of Military Review.

17 Feb. 1993.

For Appellant: Dan R. Hyatt, Captain Robert L. Carey, JAGC (on brief).

For Appellee: Colonel Dayton M. Cramer, JAGC, Major Joseph C. Swetnam, JAGC, Captain Samuel J. Smith, Jr., JAGC (on brief).

Before De GIULIO, BAKER, and WALCZAK, Appellate Military Judges.

## OPINION OF THE COURT

WALCZAK, Judge:

The appellant was tried by a general court-martial composed of officer members at Fort Lewis, Washington. Contrary to his pleas, he was convicted of two specifications of wrongful distribution of cocaine, in violation of Article 112a, Uniform Code of Military Justice, 10 U.S.C. § 912a (1982 and Supp. V 1987) [hereinafter UCMJ]. The court-martial sentenced the appellant to a dishonorable discharge, confinement for five years, forfeiture of $377.00 pay per month for five years, and reduction to Private E1. The convening authority approved only so much of the adjudged sentence as provides for a bad-conduct discharge, confinement for three years, forfeiture of $377.00 pay per month for three years,[1] and reduction to Private E1.

On 16 November 1990, two agents of the Fort Lewis, U.S. Army Criminal Investigation Command (CID) apprehended the appellant for the wrongful distribution of cocaine to an undercover CID agent on three prior occasions. Special Agent (SA) H advised the appellant that he was apprehended for the wrongful possession and distribution of cocaine, and the two agents proceeded to search the appellant. During the search, the two agents did not advise the appellant of his rights or ask any questions. While the appellant was being searched, he asked SA H "If [he] would have a chance to talk to a lawyer." SA H answered "yes." The agents did not ask any questions or engage in any conversation with the appellant at this stage of the investigation.

When the appellant and agents arrived at the CID office, SA H informed a third agent, SA P, that the appellant had mentioned a lawyer. SA P took the appellant into a conference room and proceeded to elicit administrative and identification data from the appellant. Specifically, SA P asked the appellant his name, date and place of birth, unit, and social security number. No other questions were asked of the appellant at this time. The special agent then proceeded to advise the appellant of his rights in accordance with Article 31, UCMJ, using a DA Form 3881.[2] Additionally, SA P listed for the appellant the elements of the offense of wrongful distribution of cocaine and asked the appellant if he understood the elements. The appellant acknowledged that he did. Then SA P read to the appellant each enumerated paragraph on the DA Form 3881 and was assured by the appellant that he understood each. The appellant was specifically asked if he understood his right to legal counsel, whether he had consulted with counsel during the previous thirty days, and whether he was willing to waive his rights and discuss the offense without a lawyer being present. The appellant answered that he understood these rights, that he had not seen an attorney, and he was willing to discuss the offenses without a lawyer being present.

Because of the appellant's earlier question to SA H of whether he would have an opportunity to talk to a lawyer, the CID agents stopped their questioning of the appellant and sought legal guidance. Based on legal advice, a clarifying question concerning the appellant's wishes concerning counsel was typed on the comments portion of the rights-waiver form. Typed on this form was the question, "While I was apprehended I made mentioned if I would have the chance to see a lawyer, do you want to see a lawyer before questioning begins [sic]." SA P had the appellant read out loud the typed sentence to which the appellant initialed and wrote "No."

While initially denying any involvement in the offenses, the appellant admitted to being present during a drug negotiation between the undercover CID agent and a

1. Approved sentences of forfeitures are to be stated in terms of months rather than years. Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial 1003(b)(2); *United States v. Perry,* 24 M.J. 557 (A.C.M.R.1987). Accordingly, we take corrective action.

2. Department of Army Form 3881 is entitled "Rights Warning Procedure/Waiver Certificate."

third party, but maintained he did not see any exchange of drugs or money. Later, after questioning by SA P and two U.S. Customs agents, the appellant asked that the questioning be stopped and requested a lawyer. The agents immediately stopped their questioning of the appellant.

## I.

■ The appellant asserts that the military judge erred to his substantial prejudice by failing to suppress his statement to CID agents after he had invoked his right to counsel. To decide this issue, we must examine what the appellant meant when under apprehension he asked the question: "If [he] would have a chance to talk to a lawyer?" Was the appellant invoking his right to counsel or was the statement an ambiguous question asking if at a future point he would be advised accordingly?

Generally, involuntary statements by an accused are inadmissible. Manual for Courts–Martial, United States, 1984, Mil. R.Evid. 304(a) (hereinafter Mil.R.Evid.). A statement may be involuntary and therefore inadmissible if "[i]t is obtained in violation of the self-incrimination privilege or due process clause of the Fifth Amendment to the Constitution of the United States, Article 31, or through the use of coercion, unlawful influence, or unlawful inducement." Mil.R.Evid. 304(c)(3). A statement may also be inadmissible if taken in violation of the accused's Sixth Amendment right to counsel. Under Mil.R.Evid. 305(d)(1)(A), a suspect has the right to be warned of his right to counsel if "[t]he interrogation is conducted by a person subject to the code who is required to give warnings under Article 31 and the accused or suspect is in custody...." Consequently, an accused's counsel rights potentially lie under both the Fifth and Sixth Amendments. If a person exercises the right to counsel, then under Mil.R.Evid. 305(f), all questioning must cease.

In *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), the Supreme Court established a "bright line" rule regarding the invocation of the rights to remain silent and to counsel by a person

subject to custodial interrogation. *Edwards* requires that once the accused has invoked his right to counsel while he is in custody, questioning must stop unless the accused initiates the discussion or counsel "has been made available to him." The rule in *Edwards* was acknowledged in *United States v. Coleman*, 26 M.J. 451 (C.M.A.1988). In a holding decided one month after the appellant in this case gave his statement to the CID agents, the Supreme Court held, in *Minnick v. Mississippi*, 498 U.S. 146, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990), that when an accused invokes the right to counsel, counsel must be present before questioning may continue.

In deciding this issue we must first address whether the appellant invoked his right to counsel at the time of apprehension when he asked: "If [I] would have the chance to see a lawyer?" SA H testified that he interpreted the appellant's question as not a request to consult with an attorney, but rather an unequivocal asking whether at a future time he would be advised of his right to legal counsel. SA H explained that because of the appellant's question he sought out legal advice from the staff judge advocate. He was advised to include the precautionary statement on the rights-waiver form of "While I was apprehended I made mentioned if I would have the chance to see a lawyer, do you want to see a lawyer before questioning begins [sic]."

■ The appellant's statement is at best equivocal and ambiguous. If the statement by an accused is ambiguous, then the questioning agent may only ask further questions as to whether the accused wishes to assert the right to counsel. In *United States v. Whitehead*, 26 M.J. 613 (A.C.M.R. 1988), this Court rejected the view that mere mention of the word "attorney" or "lawyer" carries a magical effect. "We decline to adopt the position taken by some other courts that all questioning must cease once a suspect mentions the word "counsel" or "attorney." *Id.* at 617. Instead, this Court embraced the view that "[w]here there is an ambiguous invocation, we deem it appropriate for the authorities

to inquire whether the suspect is electing to speak." *Id.* at 618. *See also United States v. Brown,* 27 M.J. 614 (A.C.M.R. 1988); *United States v. Mathis,* 31 M.J. 726 (A.F.C.M.R.1990); *United States v. Palmer,* 29 M.J. 929 (A.F.C.M.R.1989).

■ Whether a suspect's words or deeds amount to an equivocal assertion of the right to counsel depends on the circumstances of each case, or the "whole event." *Robtroy v. Kincheloe,* 871 F.2d 1478 (9th Cir.1989). Applying this analysis, it is clear that the appellant was placed in custody by SA H. When the appellant asked SA H whether he would have a chance to see a lawyer, he had not yet been read his rights. A rights advisal is only required before interrogation commences. SA H did not question the appellant during this stage and consequently, there was no duty to advise. The appellant's statement to SA H was not an invocation of the right to counsel, but was instead an inquiry into his rights. This is an ambiguous or equivocal assertion, if it is an assertion at all.

Under *Whitehead,* SA P was permitted to ask a question to clarify what precisely the appellant meant when he asked if he would have a chance to see a lawyer. This clarification was placed squarely in the comments portion of the DA Form 3881, and captured the appellant's words less than an hour after he originally uttered them to SA H. SA P did not ask any other questions about the offense, and engaged in no other discussion with the appellant before he asked the clarification question. Neither the question nor the circumstances surrounding the asking of the question were in any way intended as a subterfuge or ploy to get the appellant to waive his rights. Instead, the question was designed to do what it did—clarify the appellant's statement to SA H and establish unambiguously whether the appellant was asserting or waiving his right to counsel.

When asked the proper *Whitehead* clarification, the appellant specifically waived the right to counsel. His waiver was knowing, voluntary, and intelligent, as was his waiver of all the other rights specified on DA Form 3881. As a result, the "bright line" tests of *Edwards* and *Roberson* are not at issue. We hold as a result, that the appellant did not invoke his right to counsel, and his subsequent waiver was complete, knowing, voluntary, and intelligent; his admissions to CID were admissible.

## II.

■ The appellant next asserts that the absence from the record of the "flyer" [3] provided to the court members in his case renders the record of trial nonverbatim, and therefore the findings should be dismissed. We disagree.

■ The test as to whether an omission from a trial record is fatal due to jurisdiction error turns on whether the omission is substantial. *United States v. Gray,* 7 M.J. 296 (C.M.A.1979). Insubstantial omissions from a record of trial do not affect its characterization as a verbatim or complete record. *United States v. McCullah,* 11 M.J. 234 (C.M.A.1981). Recently, this Court in *United States v. Cudini,* 36 M.J. 572 (A.C.M.R.1992), held that failure to include the flyer in the record of trial as an appellate exhibit did not result in a nonverbatim transcript and an incomplete record. *See* UCMJ art. 54(c)(1)(A). The Court reasoned that the absence from the trial record of the flyer is not a substantial omission and consequently, the presumption of prejudice was not raised. *Cudini* 36 M.J. at 573; *see also United States v. Johnson,* 33 M.J. 1017 (A.C.M.R.1991).

## III.

The third contention by the appellant is that the record of trial fails to affirmatively demonstrate that his post-trial submission was brought to the attention of the convening authority by the staff judge advocate or that the convening authority considered the matters raised by his submissions. Accordingly, he concludes that the convening authority failed to consider clemency matters to appellant's prejudice.

3. The flyer is a listing of the charges and specifications alleged against an accused. It is provided to the court members for their use throughout the trial.

850

In response to being served a copy of the staff judge advocate's post-trial recommendation, the appellant's defense counsel submitted a letter requesting clemency on behalf of the appellant. He also submitted a letter from the appellant and his family. The staff judge advocate wrote an addendum to the initial post-trial recommendation, specifically referenced and summarized the defense submissions, and attached them as enclosures. They were not, however, specifically designated. The convening authority took action consistent with the recommendations of the staff judge advocate, however, the action did not indicate whether the convening authority reviewed and considered the defense submission before he took his action.

■ This Court has repeatedly held that it is easy for staff judge advocates to dispel this uncertainty. Convening authorities must demonstrate some tangible proof that they did in fact receive and consider defense submissions prior to taking their action. *See United States v. Hallums*, 26 M.J. 838 (A.C.M.R.1988). In the instant case, the government has submitted the affidavit of the staff judge advocate in the appellant's case. The staff judge advocate avers that the post-trial clemency matters submitted by the defense counsel and the appellant were provided to and considered by the convening authority prior to the convening authority taking his action. Accordingly, the appellant's assignment of error is without merit.

IV.

■ The appellant next contends that his detailed military defense counsel refused to assist him because he had retained civilian counsel. The appellant argues that he was denied the effective assistance of counsel as a consequence. We disagree.

■ The appellant is entitled to effective representation by counsel before, during, and after his trial. *United States v. Holt*, 33 M.J. 400 (C.M.A.1991). The appellant's claim of ineffectiveness of counsel will be tested under the analysis of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); and *United States*

*v. Scott*, 24 M.J. 186 (C.M.A.1987). The burden is on the appellant to demonstrate that counsel's performance was deficient under the circumstances and that this deficiency resulted in prejudice to the appellant. *Scott*, 24 M.J. at 188.

In a post-trial affidavit, the appellant maintains that his detailed military defense counsel would not talk to him after learning that he had retained Mr. H, a civilian lawyer, and did not speak with him again until after trial. The appellant further complains that his military counsel failed to advise his civilian counsel that the appellant's battalion commander could be challenged from sitting on the court-martial panel. Finally, the appellant asserts that his military defense counsel refused to assist in the preparation of post-trial matters. The appellant does not, however, contend that his civilian defense counsel, Mr. H., or a second civilian attorney retained to represent the appellant during post-trial proceedings were ineffective.

In response to this allegation, the military trial defense counsel submitted an affidavit explaining in detail his representation of the appellant during the pretrial, trial, and post-trial stages. Counsel denies that he refused to assist the appellant or the appellant's retained civilian counsel. He states that he offered to assist Mr. H during the pretrial and trial stages, and the appellant's second civilian counsel during post-trial proceedings. Counsel maintains, and the record supports, Mr. H was the lead counsel who very ably represented the appellant during the pretrial and trial stages. He further asserts that he conferred with Mr. H concerning issues, motions, and initiated and conducted a background search of the key government witness. Counsel maintains that he assisted Mr. H at trial and commented on his representation. Following the announcement of the sentence, Mr. H informed the military judge that he would handle post-trial matters and requested all post-trial be sent to him.

When the appellant retained a second civilian counsel to represent him for post-trial matters, the military defense counsel

reiterated his willingness to assist with post-trial matters. The military defense counsel maintains that his assistance was never requested by the appellant or his newly-retained civilian counsel. He also asserts that Mr. H was aware that court members, including the appellant's battalion commander, who was sitting on the panel,[4] could be challenged for cause, but that leaving the appellant's battalion commander on the panel was consistent with the defense theory of the appellant's good military record. We find the military defense counsel's affidavit detailed, credible, and forthright.

Testing the appellant's assertions and the military defense counsel's responses, under the two-prong test of *Strickland* and *Scott,* we conclude no deficiency or prejudice to the appellant has been shown. Clearly, from the record and post-trial submission, the military defense counsel took a subordinate role to the appellant's civilian counsel at trial and the post-trial stages. He was not the lead counsel representing the appellant; rather his role consisted of assisting the appellant and appellant's retained civilian counsel during the proceedings. The appellant does not complain about the representation provided by his civilian counsel, nor demonstrate a deficiency or prejudice on behalf of his military defense counsel. Accordingly, the assignment of error is without merit.

## V.

The appellant's final assignment of error is that the evidence is factually and legally insufficient to support the finding of guilt beyond a reasonable doubt. We disagree.

We find that the court members could have found beyond a reasonable doubt the essential elements of the two distributions of cocaine. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). After weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, we are convinced of the appellant's guilt be-

yond a reasonable doubt. UCMJ art. 66(c); *United States v. Turner,* 25 M.J. 324 (C.M.A.1987); *United States v. Harper,* 22 M.J. 157 (C.M.A.1986).

The findings of guilty are affirmed. The sentence is affirmed except that the term of forfeitures shall be thirty-six months rather than three years.

Senior Judge De GIULIO and Judge BAKER concur.

---

**4.** LTC L, the appellant's battalion commander, stated on *voir dire* that he was unaware that appellant was in his battalion until the day of trial. He further stated that he did not know the appellant and knew nothing about his case.